1    CRAIG H. MISSAKIAN (CABN 125202)
     United States Attorney
2    PAMELA T. JOHANN (CABN 145558)
     Chief, Civil Division
3    KENNETH BRAKEBILL (CABN 196696)
     Assistant United States Attorney
4            450 Golden Gate Avenue, Box 36055
             San Francisco, California 94102-3495
5            Telephone: (415) 436-7167
             Facsimile: (415) 436-7169
6            Kenneth.Brakebill@usdoj.gov

7    Attorneys for Defendants U.S. DOGE Service and
     Office of Management and Budget
8

9                       UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                         SAN FRANCISCO DIVISION

12

13   MSW MEDIA, INC. and FIRST              Case No. 3:25-cv-02881-AMO
     AMENDMENT COALITION,

14          Plaintiffs,                     **MOTION TO DISMISS OR TRANSFER FIRST
                                            AMENDED COMPLAINT; IN THE**
15      v.                                  **ALTERNATIVE, MOTION TO STAY**

16   U.S. DOGE SERVICE and OFFICE OF
     MANAGEMENT AND BUDGET,
17                                          Date:  August 7, 2025
            Defendants.                     Time: 2:00 p.m.
18                                          The Honorable Araceli Martínez-Olguín

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION.............................................................................................................1

3   RELIEF REQUESTED...........................................................................................................1

4   STATEMENT OF ISSUES TO BE DECIDED ...................................................................1

5   MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

6   I.     INTRODUCTION ...................................................................................................2

7   II.    FACTUAL BACKGROUND .................................................................................3

8       A.    The Plaintiffs In This Action .....................................................................3

9       B.    Plaintiffs' FAC Allegations .......................................................................4

10             1.    Statements About DOGE During the Presidential Campaign and Before the 2025 Inauguration ......................................................4

11

12             2.    The Implementation of DOGE After the President's Inauguration ......5

13             3.    Elon Musk's Role For USDS..........................................................6

14       C.    Plaintiffs' Three FOIA Requests ...............................................................6

15             1.    MSW Media Request No. 1 ..............................................................6

16             2.    First Amendment Coalition Request No. 1 .......................................6

17             3.    First Amendment Coalition Request No. 2 .......................................6

18       D.    Plaintiffs' Lawsuit......................................................................................7

19       E.    Related D.C. FOIA Litigation ....................................................................8

20             1.    District Court Lawsuit in D.D.C. ......................................................8

21             2.    Mandamus Petition Before the D.C. Circuit .....................................9

22             3.    The Government's Application to the United States Supreme Court....10

23   III.   LEGAL STANDARDS ........................................................................................10

24       A.    Federal Rule of Civil Procedure 12(b)(3) ...............................................10

25   IV.   ARGUMENT .......................................................................................................11

26       A.    Venue For This Action Does Not Lie In The Northern District Of California...............11

27             1.    Venue Is Not Proper Under the Special Forum Provision of FOIA As To Each Claim and As To Each Party ................................................11

28

2. Pendent Venue Is Unavailable For MSW Media's Claims Because Venue Is Governed By The FOIA's Special Forum Provision..........................12

3. The General Venue Provision of 28 U.S.C. § 1391 Does Not Establish Venue For This Lawsuit..........................14

B. Because This Case Cannot Proceed In The Northern District Of California, The Case Should Be Transferred To The District Of Columbia Pursuant To 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a) ..........................14

1. MSW Media's FOIA Claims Should Be Transferred to the District Of Columbia..........................15

2. The FOIA Claims Of First Amendment Coalition Should Be Transferred To The District Of Columbia Under 28 U.S.C. § 1404(a)..................15

C. In the Event the Court Retains Any Aspect of the FAC, the Court Should Enter a *Landis* Stay..........................19

1. This Court Has the Equitable Power to Issue a Temporary Stay..........................19

2. Consideration of the Landis Factors Militates in Favor of a Stay..........................21

(i) Possible Damage to the Non-Moving Party..........................21

(ii) Hardship or Inequity to Moving Party If Matter Proceeds..........................22

(iii) Orderly Course of Justice..........................24

V. CONCLUSION..........................25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abissi v. USCIS*, 729 F. Supp. 3d 505, 508-09 (D. Md. 2024) (D. Md. 2024) ................................ passim

*Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933 (N.D. Cal. 2015) ............................................ 22

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*,
    No. C 06-3805 JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006) ........................... 17

*Barroca v. United States*,
    No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ...................... 17

*Boggs v. United States*, 987 F. Supp. 11 (D.D.C. 1997) ................................................. 13-14

*Campaign for Accountability v. U.S. Dep't of Justice*,
    280 F. Supp. 3d 112, 115 (D.D.C. 2017 ................................................. 20

*CMAX, Inc.  v. Hall*, 300 F.2d 265 (9th Cir. 1962)

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
    593 F.2d 857 (9th Cir. 1997) .......................................................... 19-20, 21

*Echols v. Morpho Detection, Inc.*,
    No. 12-cv-1581-CW, 2013 WL 1501523 (N.D. Cal. Apr. 11, 2013) ........................ 13

*Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096 (N.D. Cal 2016) ............................... 21, 22

*Fabus Corp. v. Asiana Exp. Corp.*,
    No. C-00-3172 PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ............................ 16

*Harville v. Three Wishes Foods, Inc.*,
    No. 5:22-CV-04774-EJD, 2023 WL 4535476 (N.D. Cal. July 13, 2023) ................... passim

*Hawaii v. Trump*, 233 F. Supp. 3d 850 (D. Haw. 2017) ....................................... 23

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ............................................................ 16

*Holmes-Hamilton v. FBI*, No. 21-cv-00702, 2021 WL 5166376 (D. Md. Nov. 5, 2021) ........... 12, 13, 18

*In re Hall, Bayoutree Assoc., Ltd.*, 939 F.2d 802 (9th Cir. 1991) ............................ 17

*In re Scott*, 709 F.2d 717 (D.C. Cir. 1983) .......................................................... passim

*Jones v. GNC Franchising*, 211 F.3d 495 (9th Cir. 2000) ........................................ 16

*Lal v. Capital One Fin. Corp.*,
    No. 16-CV-00674-BLF, 2017 WL 282895 (N.D. Cal. Jan 23, 2017)) ....................... 23

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................... 19, 21

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1997) ......................... 19-20

*Matlack, Inc. v. U.S. EPA*, 868 F. Supp. 627 (D. Del. 1994) ................................................... 19

*McElrath v. Uber Techs., Inc.*
    No. 16-CV-07241-JSC, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ............................... 20

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2004) .............................................. 11

*Noble v. JP Morgan Chase Bank, Nat'l Ass'n*,
    No. 22-CV-02879-LB, 2022 WL 4229311 (N.D. Cal. Sept. 13, 2022) ......................... 20, 23

*Our Children's Earth Found. v. EPA*,
    No. 08-cv-01461-SBA, 2008 WL 3181583 (N.D. Cal. Aug. 4, 2008) ........................ 15, 16, 18

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ....................................... 20

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979) ................... 10, 12

*Pruitt v. J.P. Morgan Chase*, No. 15-cv-04778, 2016 WL 11794182 (C.D. Cal. June 30, 2016) ........... 13

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974)) ......................................... 20

*Robledo v. Randstad US, L.P.*,
    No. 17-CV-01003-BLF, 2017 WL 4934205 (N.D. Cal. Nov. 1, 2017) ................................. 20

*Sanchez Mora v. U.S. Customs & Border Prot.*,
    No. 3:24-CV-02430-TLT, 2024 WL 5378335 (N.D. Cal. Nov. 4, 2024) ...................... passim

*Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................. 10-11

*Sierra Club v. TVA*, 905 F. Supp. 2d 356 (D.D.C. Nov. 29, 2012) ........................................ 2-3

*Smith v. Corizon Health, Inc.*,
    No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) ................................. 17

*Vance v. Google LLC*,
    No. 5:20-CV-04696-BLF, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021) ........................ passim

*Whitaker v. DOC*, 970 F.3d 200 (2nd Cir. 2020) ..................................................................... 19

## **Statutes**

28 U.S.C. § 1391 ........................................................................................................... 11, 14

28 U.S.C. § 1404(a) ............................................................................................................ passim

28 U.S.C. § 1406(a) ............................................................................................................ passim

28 U.S.C. § 1631 ............................................................................................................... 1, 15

5 U.S.C. § 552(a)(4)(B) ..................................................................................................... passim

5 U.S.C. § 552(f)(1) ................................................................................................................. 3

## **Other Authorities**

Dep't of Justice, Guide to the Freedom of Information Act § 3-17.100B (2012) ...................................... 2

## **Executive Orders**

Executive Order 14,158, 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025)........................................................ 5, 8

## **Rules**

Federal Rule of Civil Procedure 12(b)(3) ........................................................................................ 1, 10, 11

Federal Rule of Civil Procedure 12(b)(6) ................................................................................................ 10

## **Treatises**

14D Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 3807 (4th ed. 2023)................................................................. 11

14D Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 3808 (4th ed. 2023)................................................................. 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that pursuant to the Court's current availability, on August 7, 2025, at 2:00 p.m., or as soon thereafter as the parties may be heard, in the above-entitled Court, before the Honorable Araceli Martínez-Olguín, Defendants United States DOGE Service and Office of Management and Budget (collectively "Defendants") will and hereby do move this Court for an order (1) transferring this matter to the United States District Court for the District of Columbia, or in the alternative, (2) staying the entire action, or any non-transferred parts of the First Amended Complaint ("FAC"), pending resolution of the underlying threshold legal issues by the United States Supreme Court in currently pending D.C. Litigation. This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(3) and transfer statutes 28 U.S.C. § 1404(a), 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631. Defendants' motion is based on this Notice; the Memorandum of Points and Authorities; matters of which the Court will take judicial notice; and any other written or oral argument or evidence as the Court may permit before the time it takes this motion under submission.

**RELIEF REQUESTED**

Defendants seeks an order transferring this action to the United States District Court for the District of Columbia or, in the alternative, staying the action or any non-transferred parts of the FAC pending resolution of the underlying threshold legal issues by the United States Supreme Court in the currently pending D.C. Litigation.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether, under 5 U.S.C. § 552(a)(4)(B), venue for this action as plead is improper in the Northern District of California;

2.      Whether this action should be transferred to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a), 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631.

3.      Whether, in the event the Court does not transfer the action, the Court should stay the case pending resolution of the underlying threshold issues by the United States Supreme Court in currently pending D.C. Litigation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
No. 3:25-cv-02881-AMO

1

## I.    INTRODUCTION

In this action, two organizations seek relief under the Freedom of Information Act ("FOIA") in the Northern District of California when their action as plead is only properly brought in the District of Columbia. Although one Plaintiff has a principal place of business in this District, the co-Plaintiff is out-of-District, and the operative pleading contains no allegation that documents reside in this District. The underlying action concerns two governmental entities headquartered in Washington D.C., and the complaint is devoid of any allegation that any relevant conduct occurred in the Northern District.

At issue in this case are three FOIA requests that the resident and non-resident Plaintiffs submitted to United States DOGE Service ("USDS") during February and March 2025. Plaintiffs seek an order from the Northern District of California directing USDS to release all requested records and to accept electronic requests submitted through the FOIA.gov portal. Plaintiffs also allege that USDS and the Office of Management and Budget ("OMB") have engaged in an ongoing pattern or practice to refuse to allow electronic FOIA requests to USDS; they seek another order from the Northern District of California compelling OMB to allow such requests and requiring USDS to accept electronic requests. As a substantive matter, the Court cannot grant any of this relief since USDS, as a component of the Executive Office of the President ("EOP") whose function is to advise and assist the President and that wields no substantial authority independently of the President, is not an "agency" for purposes of FOIA. But as concerns this motion—and as a threshold matter, this case as plead cannot be litigated in the Northern District of California because venue is not proper under the special-forum provision in FOIA, 5 U.S.C. § 552(a)(4)(B), as to each claim and each party.

Congress has directed that a district court considering "*a case* laying venue in the wrong division or district" "shall dismiss … *such case*," but it has alternatively empowered the same district court "in the interest of justice" to transfer the entire lawsuit "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). This Court should exercise this latter power. While the FOIA claims brought in this case cannot all be litigated in the Northern District of California, there is a federal district court that can entertain the FOIA claims of both Plaintiffs in this lawsuit. The proper forum for this lawsuit is the District of Columbia, which is the "all-purpose," "universal venue for FOIA

1  lawsuits[.]" *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983); *Sierra Club v. TVA*, 905 F. Supp. 2d 356,

2  359 (D.D.C. Nov. 29, 2012) (quoting Dep't of Justice, Guide to the Freedom of Information Act § 3-

3  17.100B (2012)). Accordingly, this Court should transfer this action to the District of Columbia, which

4  is the only forum that can remedy the venue deficiencies and consider the FOIA claims of all Plaintiffs.

5       While judicial economy and other factors favor transfer of the entire action to the District of

6  Columbia, if the Court were to retain any part of this case, it should exercise its equitable power and

7  enter a *Landis* stay. Such a stay, which would be of limited duration, would pause any remaining claims

8  in this District pending resolution of the legal issues at the heart of this action. Those issues—bearing on

9  whether USDS is an "agency" for purposes of FOIA, and possibly the propriety of discovery thereon—

10 has been the subject of ongoing litigation in the District of Columbia since February 2025 ("D.C.

11 Litigation") and is currently pending before the United States Supreme Court on the government's May

12 21, 2025 petition for relief ("SCOTUS Application"). Resolution of the SCOTUS Application

13 concerning the issues in the D.C. Litigation will directly impact whether and to what extent this lawsuit

14 can proceed. Indeed, the propriety of each claim in Plaintiffs' FAC is founded upon the faulty premise

15 that USDS is an "agency" under 5 U.S.C. § 552(f)(1) and therefore subject to FOIA such that there

16 exists any obligation under FOIA to produce records, much less accept electronic FOIA requests on the

17 FOIA.gov portal. For reasons of judicial economy and legal consistency, the Court should stay any non-

18 transferred part of this case pending resolution of the underlying threshold issues by the Supreme Court.

19 **II.    FACTUAL BACKGROUND**

20      **A.    The Plaintiffs In This Action**

21      The first named Plaintiff in this case is MSW Media, Inc. ("MSW Media"), which the FAC

22 describes as "a media business incorporated in the state of California" whose principal place of business

23 is in San Diego, California. FAC ¶ 1. According to its website, MSW Media is "a female-led podcast

24 network of like-minded irreverent shows that shine a light on truth in politics, news and the arts."

25 https://mswmedia.com. The second Plaintiff in this case is First Amendment Coalition, which the FAC

26 describes as "a California non-profit corporation dedicated to freedom of speech and government

27 transparency" and which "files litigation to defend and expand the rights of the public and press under

28 MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND
   AUTHORITIES
   No. 3:25-cv-02881-AMO

access laws, including FOIA." FAC ¶ 2. According to the FAC, First Amendment Coalition has its principal place of business in San Rafael, California. *Id.*

**B.    Plaintiffs' FAC Allegations**

Plaintiffs present a factual background in their FAC that purports to address (1) the origin of USDS, including alleged statements made during the presidential campaign about "DOGE," (2) the DOGE structure as implemented in the President's January 20, 2025 Executive Order, and (3) alleged post-inauguration statements about the role of Elon Musk for USDS. FAC ¶¶ 11-42.

**1.    Statements About DOGE During the Presidential Campaign and Before the 2025 Inauguration**

Plaintiffs contend that the origin of the "Department of Government Efficiency" or "DOGE" dates to a presidential campaign event on August 19, 2024, in which President Trump stated that he would consider an administration position for Elon Musk, who later that evening replied from a social media account indicating a willingness to serve. FAC ¶ 11. They allege that after his election, President Trump indicated he would appoint Mr. Musk and Vivek Ramaswamy to lead DOGE, "which he described as a new entity that would 'provide advice and guidance from out of Government' and 'partner with the White House and Office of Management & Budget to drive large scale structural reform, and create an entrepreneurial approach to Government never seen before.'" *Id.* ¶ 12. According to Plaintiffs, Messrs. Musk and Ramaswamy stated their intention in an opinion editorial in the *Wall Street Journal* that, through DOGE, to "effect 'mass head-count reductions across the federal bureaucracy' through executive action." *Id.* ¶ 13-14.

Plaintiffs allege that the goal of DOGE—as they surmise from a January 12, 2025 *New York Times* article citing unnamed "people who have insight into DOGE's operations"—was to have two DOGE representatives in most major agencies and to have a minority of others not detailed to agencies housed within the Executive Office of the President at the U.S. Digital Service. *Id.* ¶ 15. And citing to the same *New York Times* article and an undated "public blog post," Plaintiffs claim that "'secrecy and avoiding leaks [were to be] paramount' for the organization, hence "much of its communication is conducted on Signal, the encrypted messaging app." *Id.* ¶¶ 16-17.

### 2.    The Implementation of DOGE After the President's Inauguration

On January 20, 2025, President Trump issued Executive Order 14,158, entitled Establishing and Implementing the President's "Department of Government Efficiency." FAC ¶ 18. That Executive Order directed changes to the previously established United States Digital Service in order to implement the President's "DOGE agenda" of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." 90 Fed. Reg. 8441, § 4. E.O. 14,158 reconstituted the United States Digital Service as the U.S. DOGE Service, moved it out of OMB, and made it a free-standing component of the Executive Office of the President. *Id*. § 3(a). E.O. 14,158 further provided that "[t]here shall be a USDS Administrator established in the Executive Office of the President who shall report to the White House Chief of Staff" and a "U.S. DOGE Service Temporary Organization" within USDS pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. E.O. 14,158 § 3(b). Agency heads are required under E.O. 14,158 to establish within their respective agencies an agency DOGE Team of at least four employees, which may include Special Government Employees, and all of whom are agency personnel selected by agency leadership in consultation with the USDS Administrator. *Id*. § 3(c).[1]

Plaintiffs allege that "USDS does more than merely advise and assist the President" and "wields substantial authority independently of the President, whether by the terms of the Order or other applicable rules or regulations or in actual practice." FAC ¶ 21. Plaintiffs also claim that "USDS staff have entered numerous government agencies and have: (a) gained access to computer systems previously available only to agency employees; (b) rendered decisions related to agency payments or agency personnel; and (c) ordered agency supervisors or staff to take various actions." *Id*. ¶ 22; *see also id*. ¶¶ 23-28 (alleging examples of these purported actions). And Plaintiffs contend that USDS "continues to use Signal—which allows messages to be set to disappear after a period of time—to conduct official business." *Id*. ¶ 29.

---

[1] As reflected in E.O. 14158, DOGE is the umbrella term reflecting the governmental efficiency initiative of the President. USDS is the entity that advises the President on that DOGE initiative. And the agency DOGE teams are the teams of "at least four employees" who work for and within federal agencies implementing DOGE initiatives within those respective agencies.

### 3.    Elon Musk's Role For USDS

Plaintiffs acknowledge that the White House contends that Amy Gleason is the Acting USDS Administrator. FAC ¶ 30. Plaintiffs also point to public declarations of USDS officials, including Ms. Gleason, stating that Mr. Musk is not an employee of USDS or the U.S. DOGE Service Temporary Organization; and that Mr. Musk is an advisor to the President and Senior Advisor to the White House. *Id*. ¶¶ 30-31. But Plaintiffs allege that Mr. Musk is "actually running USDS in practice if not in formal name." *Id*. ¶ 30. They cite to news articles, public documents or statements they say indicate that Musk is the head of USDS, *id*. ¶¶ 31-39, all of which refer to "DOGE" generally and not USDS, in particular.

### C.    Plaintiffs' Three FOIA Requests

Plaintiffs submitted three FOIA requests to USDS. None is attached to Plaintiffs' FAC.

### 1.    MSW Media Request No. 1

On February 11, 2025, Plaintiff MSW Media submitted to USDS a FOIA request for "all emails sent or received by employees of the US DOGE Service between February 7th, 2025, and February 10th, 2025, inclusive." FAC ¶ 44. This request was sent by Federal Express to U.S. DOGE Service, Executive Office of the President, 1600 Pennsylvania Avenue, NW, Washington, DC 20500. *Id*. ¶ 45.

### 2.    First Amendment Coalition Request No. 1

On February 25, 2025, Plaintiff First Amendment Coalition submitted to USDS a FOIA request for "all emails or other electronic text communications sent or received by any employees of the U.S. DOGE Service or U.S. DOGE Service Temporary Organization from January 20, 2025, to the date of this request in which Elon Musk was either the sender or a recipient." FAC ¶ 49. This request was sent by Federal Express to U.S. DOGE Service, Executive Office of the President, 1600 Pennsylvania Avenue, NW, Washington, DC 20500. *Id*. ¶ 50.

### 3.    First Amendment Coalition Request No. 2

On March 10, 2025, Plaintiff First Amendment Coalition submitted to USDS a FOIA request for records from Musk's cell phone. FAC ¶ 54. According to the FAC, First Amendment Coalition's FOIA request "provided introductory context [from reports] that Musk had given his cell phone number to policymakers and then requested: '1) any record or records of all phone calls made or received using the

1  phone number(s) that Musk gave to the Republican Senators and Secretary Duffy; and 2) all emails or

2  other electronic text communications sent or received using the phone number(s) that Musk gave to the

3  Republican Senators and Secretary Duffy.'" *Id*. ¶ 55. First Amendment Coalition "specified that USDS

4  'may limit the scope of this request to calls or messages pertaining to the activities of [DOGE]' and

5  'may also limit the scope of this request to the last 500 phone calls, last 1000 emails, and last 5000

6  electronic messages as of the date of your first search for responsive records.'" *Id*. ¶ 56. First

7  Amendment Coalition also concluded its request by saying, "'Please begin accepting FOIA requests

8  electronically as required by statute.'" *Id*. 58. This FOIA request was sent by Federal Express to U.S.

9  DOGE Service, Executive Office of the President, 1600 Pennsylvania Avenue, NW, Washington, DC

10  20500. *Id*. ¶ 59.

11      **D.    Plaintiffs' Lawsuit**

12      On March 28, 2025, MSW Media and First Amendment Coalition filed their original complaint,

13  alleging two causes of action against USDS: (1) violation of FOIA for constructive denial of MSW

14  Media's FOIA Request No. 1 and (2) violation of FOIA for constructive denial of First Amendment

15  Coalition's FOIA Request No. 1. ECF No. 1 at 9-10. Plaintiffs also sought a declaration that "the United

16  States DOGE Service is an agency subject to FOIA" and an order compelling USDS "to release all

17  requested records to them." *Id*. at 10.

18      On April 10, 2025, the two co-Plaintiffs filed a "First Amended" Complaint making various

19  additions to the original pleading. *See* ECF 13-1 (noting redline additions and changes). Among other

20  things, Plaintiffs added (1) OMB as a new defendant, (2) a third cause of action against USDS for

21  constructive denial of First Amendment Coalition's FOIA Request No. 2 and (3) a fourth cause of action

22  on behalf of both Plaintiffs for "Refusal to Accept Electronic Requests." *Id*. The fourth cause of action is

23  framed as a pattern or practice claim in which Plaintiffs contend that "USDS and OMB maintain an

24  ongoing policy, pattern, practice, or standard operating procedure ("SOP") of refusing to allow

25  electronic FOIA requests to be submitted to USDS through FOIA.gov." FAC ¶ 67; *see also id*. ¶ 70

26  (seeking a "declaratory judgment that USDS and OMB are in violation of their statutory responsibilities

27  under FOIA and an injunction compelling USDS pursuant to that statute to accept electronic FOIA

requests submitted through FOIA.gov and compelling OMB pursuant to that statute to allow requesters to submit electronic requests to USDS through FOIA.gov").

### E.    Related D.C. FOIA Litigation

The issues of whether USDS is an "agency" for purposes of FOIA, and the propriety of discovery thereon, have been the subject of ongoing litigation in the District of Columbia since February 2025. The appropriate contours of the inquiry into whether an entity is an agency for purposes of FOIA and the propriety of discovery in answering that question are currently pending with the U.S. Supreme Court on the government's May 21, 2025 application for relief.

#### 1.    District Court Lawsuit in D.D.C.

On January 24, 2025, or four days after USDS was created—an organization called Citizens for Responsibility and Ethics in Washington D.C. ("CREW") submitted a FOIA request to USDS seeking "[a]ll communications between the USDS Administrator and USDS staff," "[a]ll communications between USDS personnel and personnel of any federal agency," and all financial disclosures or ethics pledges executed by USDS personnel. Exhibit D to Motion for Preliminary Injunction (ECF No. 2-6) at 2–3, *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service,* No. 1:25-cv-00511-CRC (D.D.C. Feb. 20, 2025) ("CREW D.D.C."). Less than a month later, on February 20, 2025, CREW filed a lawsuit in the District of Columbia based on that request and two similar requests to OMB. *CREW D.D.C.*, Dkt. No. 1. The CREW plaintiff also filed a motion for a preliminary injunction the same day, asking the district court to require USDS to process and produce all non-exempt responsive documents by March 10, 2025. *Id.*, Dkt. No. 2. After full briefing, on March 10, 2025, the district court held that the plaintiff was not entitled to the requested preliminary injunction and also rejected plaintiff's only theory of irreparable harm, but nevertheless predicted that USDS was likely an agency subject to FOIA, treated the plaintiff's motion as one for expedited processing, and ordered "USDS to process the request on an expedited basis." *Id.*, Dkt. No. 18 at 15-16, 22-28.  That decision, by its own admission, relied on hearsay media reports that referred to "DOGE" generally, not USDS, in particular, in evaluating the nature of USDS's authority. *Id.* at *12. It also relied heavily on a statement in EO 14,158 that described the purpose of "the President's 'Department of Government Efficiency'" as

MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
No. 3:25-cv-02881-AMO

"implement[ing] the President's DOGE agenda," *id.* at *11, without acknowledging that the verbiage appears in prefatory language in the E.O., and the "Department of Government Efficiency" refers to both USDS *and* agency DOGE Teams, the latter of which are comprised of agency personnel reporting up agency chains and responsible for implementing the President's DOGE agenda within their agencies.

In response, on March 19, 2025 USDS filed a motion for summary judgment to fully brief the threshold legal issue whether it is an "agency" subject to FOIA. *CREW D.D.C.*, Dkt. No. 24. The plaintiff then moved on March 27, 2025, for expedited discovery, including discovery on the issue of what they characterized as "the fact-bound question of whether DOGE wields substantial independent authority." *Id.*, Dkt. No. 27 at 3. On April 15, 2025, the district court granted most of the plaintiff's discovery requests. *Id.*, Dkt. No. 38. On April 17, 2025, the government filed a motion for a stay of the discovery order pending a petition for a writ of mandamus in the D.C. Circuit. *Id.*, Dkt. No. 39.

### 2. Mandamus Petition Before the D.C. Circuit

On April 18, 2025, the government filed a petition for a writ of mandamus in the D.C. Circuit and moved for a stay pending the D.C. Circuit's ruling on the petition. Petition for Writ of Mandamus (Doc. No. 2111757), *In re U.S. DOGE Service,* No. 25-5130 (D.C. Cir. Apr. 18, 2025) ("*CREW D.C. Circuit*"). On the same day, the court of appeals issued an administrative stay and directed an expedited briefing schedule. *CREW D.C. Circuit*, Doc. No. 2111847. On May 14, 2025, a different panel denied the government's mandamus petition and stay motion in an unpublished order. *Id.*, Doc. No. 2115720. Among other things, the *CREW D.C. Circuit* determined that discovery was appropriate because, in its view, the threshold inquiry whether a presidential advisory body is subject to FOIA is a "functional analysis" that "depends on the practical realities of the entity's role, not merely on its formal placement or authority within the Executive Office of the President." *Id.* at 2.

Days later, on May 19, 2025, the CREW plaintiff subsequently filed a motion in the district court asking the district court to modify the discovery deadlines following the court of appeals' decision and to deny as moot the government's prior motion for a stay pending its petition for a writ of mandamus in the court of appeals. *CREW D.D.C.*, Dkt. No. 41, at 1. The government opposed the motion "insofar as it proposes that discovery go forward before the Supreme Court's resolution of [the government's]

forthcoming application for relief from discovery." *Id*. On May 20, 2025, the district court granted the CREW plaintiff's motion. *Id*., Dkt. No. 42, at 1. The district court ordered USDS to serve responses and objections to plaintiff's discovery requests "within 7 days," produce all responsive documents "within 14 days," and complete "all depositions * * * within 10 days from the deadline for producing documents," in short resulting in the completion of all ordered discovery by June 13, 2025. *Id*.

### 3.    The Government's Application to the United States Supreme Court

On May 21, 2025, the government filed an application with the U.S. Supreme Court to stay the orders of the *CREW D.D.C.* and the *CREW D.C. Circuit* pending certiorari or mandamus and request for immediate administrative stay. Application for Stay Pending Certiorari or Mandamus, *In re U.S. DOGE Service*, No. 24A1122 (May 21, 2025) ("Application"). The Supreme Court granted an administrative stay on May 23, 2025. *In re U.S. DOGE Service*, No. 24A1122 (May 23, 2025). Currently pending before the Supreme Court are the questions of whether an entity's agency status is a formal or functional inquiry and, relatedly, whether and what discovery is appropriate in conducing that inquiry. *See* Application (May 21, 2025), at 13-33. The government's position is that whether an entity is an agency is a formal inquiry that turns on the grants of legal authority, and by the terms of the originating EOs, USDS is not an agency.[2] *See, e.g., id.* at 31.

## III.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(3)

A defendant may move to dismiss a case under Federal Rule of Civil Procedure 12(b)(3) for improper venue. After a defendant challenges venue, the burden rests on the plaintiff to show that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1188 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). When analyzing a Rule 12(b)(3) motion, the district court need not accept as true all allegations in the plaintiff's complaint and may consider facts outside the

---

[2] Defendants submit the instant motion as a 12(b)(3) motion for improper venue and not a 12(b)(6) motion addressing the legal issue of whether USDS is an agency under FOIA. But should the case not be transferred or the Court retain any part of this case, Defendants reserve the right to—and intend to argue in a dispositive motion at a later stage—that USDS is not an agency under FOIA.

MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
No. 3:25-cv-02881-AMO

pleadings.  *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). But the Court "is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138.

## IV.    ARGUMENT

### A.    Venue For This Action Does Not Lie In The Northern District Of California

Plaintiffs assert two bases for venue in the Northern District of California: the special venue provision within FOIA, 5 U.S.C. § 552(a)(4)(B), and the general-venue provision of Title 28,  28 U.S.C. § 1391. *See* FAC ¶ 6. Neither supports maintenance of the FAC in this District.

#### 1.    Venue Is Not Proper Under the Special Forum Provision of FOIA As To Each Claim and As To Each Party

Because this case is an action brought under FOIA, the Court must look to the venue provision of FOIA to determine if Plaintiffs' claims are properly in in the Northern District of California. Section 552(a)(4)(B) of Title 5 of the United States Code outlines the four scenarios where venue is proper in a FOIA action: (1) the complaint is brought in the district "in which the complainant resides," (2) the complaint is brought in the district in which the complainant "has his principal place of business," (3) the complaint is brought in the district "in which the agency records are situated," "or" (4) "in the District of Columbia." 5 U.S.C. § 552(a)(4)(B).

Under FOIA, venue also must be proper "as to each claim and as to each party." *Abissi v. United States Citizenship & Immigr. Servs.,* 729 F. Supp. 3d 505, 508-09 (D. Md. 2024) (analyzing venue under 5 U.S.C. § 552(a)(4)(B)); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3807 (4th ed. 2023) ("Wright & Miller"). This basic venue principle was recently confirmed in this District on consideration of a Rule 12(b)(3) motion for improper venue under 5 U.S.C. § 552(a)(4)(B). *Sanchez Mora v. U.S. Customs & Border Prot.*, No. 3:24-CV-02430-TLT, 2024 WL 5378335, at *5 (N.D. Cal. Nov. 4, 2024). As held in that case, where plaintiffs in a FOIA action cannot meet their burden to demonstrate that venue is proper for each claim and party, there is no statutory basis for them to bring their action in the Northern District of California. *Id.* (finding improper venue for entire action in the Northern District because two of the multiple plaintiffs did not establish venue).

Here, Plaintiffs cannot meet their burden of demonstrating that venue is proper with respect to the FOIA claims of Plaintiff MSW Media. *Abissi*, 729 F. Supp. 3d at 509 (holding that venue in the District of Maryland was not proper for a FOIA action where only two of the seven plaintiffs resided in that district because "venue must be proper as to each claim and as to each party"); *Piedmont Label Co.*, 598 F.2d at 496 (plaintiffs bear the burden of establishing proper venue). MSW Media is not a resident of the Northern District of California. Instead, as alleged in the FAC, MSW Media's principal place of business is in San Diego, or the Southern District of California. *See* FAC ¶ 1. Moreover, MSW Media (like its fellow Plaintiff First Amendment Coalition) does not allege that the records underlying their FOIA requests are situated in this District. As a result, MSW Media identifies no statutory basis for bringing its FOIA claims in the Northern District of California. *See* 5 U.S.C. § 552(a)(4)(B). Because venue must be proper for each claim and for each party, the Northern District of California "is therefore not a proper venue for" MSW Media's FOIA claims. *See Sanchez Mora*, 2024 WL 5378335, at *5; *Abissi*, 729 F. Supp. 3d at 509.

### 2. Pendent Venue Is Unavailable For MSW Media's Claims Because Venue Is Governed By The FOIA's Special Forum Provision

The mere fact that one of the named Plaintiffs—First Amendment Coalition—has its principal place of business in the Northern District of California "does not mean that [this] District is the proper venue under the pendent venue doctrine." *Sanchez Mora*, 2024 WL 5378335, at *4. Indeed, this Court cannot overlook the venue requirements as to the out-of-District Plaintiff's FOIA claims—and simply rely on the in-District residency of the other Plaintiff—in determining whether venue exists for the entire action as plead. Courts facing the same scenario presented in this lawsuit (*i.e.*, a FOIA lawsuit brought by multiple plaintiffs where only a subset of the plaintiffs' FOIA claims are properly venued) "routinely find that pendent venue does not apply to the improperly venued FOIA claims." *Sanchez Mora*, 2024 WL 5378335, at *5; *see also Holmes-Hamilton v. FBI*, No. 21-cv-00702, 2021 WL 5166376, at *4 (D. Md. Nov. 5, 2021); *Abissi*, 729 F. Supp. 3d at 509-10.

"Pendent venue is a 'judge-made doctrine that permits a court to hear claims for which venue does not properly lie in the district when they are closely related to claims for which venue is proper.'"

*Sanchez Mora*, 2024 WL 5378335, at *2; *Abissi*, 729 F. Supp. 3d at 509-10 (discussing pendent venue in the FOIA context); 14D Wright & Miller § 3808. But "[w]here claims are governed by a special venue statute . . . , which limits venue to specified districts, such claims may be brought only in a district specified by the statute." *Echols v. Morpho Detection, Inc.*, No. 12-cv-1581-CW, 2013 WL 1501523, at *6 (N.D. Cal. Apr. 11, 2013) (citation and quotation marks omitted); *see also Sanchez Mora*, 2024 WL 5378335, at *5; *Abissi*, 2729 F. Supp. 3d at 509 (noting that district courts are "hesitant to employ pendent venue" in cases where "Congress has enacted a special venue provision for the claim at issue."). "Put differently, courts will not apply the pendent venue doctrine to defeat Congress's intention that certain types of claims be heard in specific places." *Sanchez Mora*, 2024 WL 5378335, at *5 (quoting *Pruitt v. J.P. Morgan Chase*, No. 15-cv-04778, 2016 WL 11794182, at *6 n.5 (C.D. Cal. June 30, 2016)). That is "precisely the situation" in a case such as this one involving the FOIA statute, "which is governed by a special forum provision" in 5 U.S.C. § 552(a)(4)(B). *Sanchez Mora*, 2024 WL 5378335, at *5. In those cases, courts "routinely" hold that "the pendent venue doctrine cannot be applied to out-of-district plaintiffs." *Id.* That outcome remains true "even when the improperly venued FOIA claims are 'nearly identical' to the properly venued FOIA claims." *Id.* (quoting *Holmes-Hamilton*, 2021 WL 5166376, at *4).

To illustrate this rule, the *Sanchez Mora* court pointed to the FOIA lawsuit in *Holmes-Hamilton*, in which the claims of two of the three plaintiffs had been properly brought in the District of Maryland, but the remaining plaintiff was an out-of-district resident, and the plaintiffs did not allege that the agency maintained the records at issue in the District of Maryland. *Sanchez Mora*, 2024 WL 5378335, at *4. As noted by the *Sanchez Mora* court, the District of Maryland court in *Holmes-Hamilton* declined pendent venue over the third plaintiff's claims, stating "'the Court is unaware of any authority showing that other courts have exercised pendent venue in a FOIA records action in a similar circumstance. In fact, at least one court has previously cautioned against doing so because of concerns over forum shopping.'" *Id.*; *see also Holmes-Hamilton*, 2021 WL 5166376, at *4 (citing *Boggs v. United States*, 987 F. Supp. 11, 18 n.4 (D.D.C. 1997)). The *Holmes-Hamilton* court further supported its decision not to exercise pendent venue by noting that there was a statutorily authorized "venue where all three

Plaintiffs' claims can remain together:  The District of Columbia." *Id.* at 5. The *Abissi* court came to the exact same conclusion when it "decline[d] to invoke pendent venue" where five of the seven FOIA plaintiffs were improperly venued in the District of Maryland. *Abissi*, 729 F. Supp. 3d at 509. And the *Sanchez Mora* court also reached the same conclusion, noting that "Congress codified the FOIA-specific venue provision with the intention that FOIA claims be heard in specific places" and that exercising pendent venue over a FOIA litigant's claims that do not satisfy that venue provision "thus would defeat congressional intent." *Sanchez Mora*, 2024 WL 5378335, at *5. "Defeating that congressional intent would be especially fraught in the FOIA context of this case because Congress provided a universal, 'all-purpose' forum where *all* the Plaintiffs' FOIA claims can be adjudicated together: the District of Columbia." *Id.* (emphasis added). Hence, just like the *Sanchez Mora, Holmes-Hamilton* and *Abissi* courts found, pendent venue does not permit MSW Media to bring its FOIA claims in this District, and therefore venue for this action as alleged lies in the District of Columbia.

### 3. The General Venue Provision of 28 U.S.C. § 1391 Does Not Establish Venue For This Lawsuit

Plaintiffs' FAC also invokes the general-venue provision in 28 U.S.C. § 1391 as a basis for venue for the case. *See* FAC ¶ 6. But that provision does not operate to cure Plaintiffs' venue problems. Put simply, 28 U.S.C. § 1391 does not apply to FOIA actions. *See Friends of the River v. United States Army Corps of Eng'rs*, No. 16-cv-05052-YGR, 2016 WL 6873467, at *2 (N.D. Cal. Nov. 22, 2016). This principle was recently confirmed in this District by the court in *Sanchez Mora*. 2024 WL 5378335, at *5. The venue for the claims in this case instead is governed by the special forum provision in the FOIA, Section 552(a)(4)(B), which demonstrates that venue does not lie in this District for MSW Media's claims and instead lies for the entire action in the District of Columbia.

### B. Because This Case Cannot Proceed In The Northern District Of California, The Case Should Be Transferred To The District Of Columbia Pursuant To 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a)

Section 1406(a) of Title 8 provides the district court with two options where plaintiffs have "filed a case laying venue in the wrong division or district": the court "shall [1] dismiss, or [2] if it be in the interest of justice, transfer the case to any district or division in which it could have been brought."

28 U.S.C. § 1406(a); *In re Hall, Bayoutree Assoc., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991) (any

dismissal for improper venue must be without prejudice). "Ordinarily, the interest of justice requires

transfer rather than dismissal." *Sanchez Mora*. 2024 WL 5378335, at *6 (citing *Baeta v. Sonchik*, 273

F.3d 1261, 1264-65 (9th Cir. 2001)). "Finally, for the convenience of parties and witnesses and in the

interest of justice, a court may transfer a civil action to any other district where it might have been

brought." *Sanchez Mora*. 2024 WL 5378335, at *6 (citing 28 U.S.C. § 1404(a)). "Section 1404(a) was

designed to protect litigants, witnesses and the public against unnecessary inconvenience and expense[,]

ensure systemic integrity and fairness in the judicial process, and the efficient administration of the court

system." *Sanchez Mora*. 2024 WL 5378335, at *6 (quoting *Our Children's Earth Found. v. U.S. E.P.A.*,

No. C 08-01461 SBA, 2008 WL 3181583, *4 (N.D. Cal. Aug. 4, 2008) (cleaned up)).

### 1.    MSW Media's FOIA Claims Should Be Transferred to the District Of Columbia

Because of FOIA's special-forum provision, 5 U.S.C. § 552(a)(4)(B), there is no basis for

Plaintiff MSW Media to pursue its FOIA claims in the Northern District of California. *See supra*

Parts IV.A1-A3. Unlike the Northern District of California, however, the District of Columbia is an "all-

purpose forum in FOIA cases," and MSW Media indisputably could have brought its FOIA claims there.

*In re Scott*, 709 F.2d at 720; 5 U.S.C. § 552(a)(4)(B) (FOIA lawsuits are proper "in the District of

Columbia").  "Because the interest of justice typically requires transfer rather than dismissal, *Baeta*, 273

F.3d at 1264-65," MSW Media's FOIA claims—*i.e.*, causes of action 1 and 4 in the FAC—should be

transferred to the District of Columbia pursuant to 28 U.S.C. § 1631 and/or 28 U.S.C. § 1406(a) because

venue does not lie in this District. *See Sanchez Mora*. 2024 WL 5378335, at *7 (transferring FOIA

claims of non-resident Plaintiffs for whom venue was improper to District of Columbia "pursuant 28

U.S.C. § 1631 and/or 28 U.S.C. § 1406(a)").[3]

### 2.    The FOIA Claims Of First Amendment Coalition Should Be Transferred To The District Of Columbia Under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), First Amendment Coalition's FOIA claims also should be

---

[3] If MSW Media's claims are not transferred to the District of Columbia and the case proceeds in the Northern District, MSW Media's FOIA claims should be dismissed for improper venue.

transferred to the District of Columbia. In considering a Section 1404(a) transfer motion, the court's

initial step is to determine if the action subject to the motion to transfer "might have been brought" in

the transferee district (that is, the district to which the moving party seeks to transfer the case). *Hoffman*

*v. Blaski*, 363 U.S. 335, 343-44 (1960). Next, the court must analyze whether the transfer would serve

"the interest of justice" and "the convenience of parties and witnesses." *Sanchez Mora*. 2024 WL

5378335, at *7 (quoting *Our Children's Earth Found.*, 2008 WL 3181583, at *4). In so analyzing, the

court may consider: (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the witnesses'

convenience; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law;

(6) the feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the

relative court congestion and time to trial in each forum. *Sanchez Mora*. 2024 WL 5378335, at *7; *see*

*also Jones v. GNC Franchising*, 211 F.3d 495, 498-99 (9th Cir. 2000). Finally, "'[w]hen venue is proper

with respect to some, but not all, parties, district courts have discretion to transfer the entire case to a

proper venue.'" *Sanchez Mora*. 2024 WL 5378335, at *7 (quoting *Abissi*, 729 F. Supp. 3d at 510 (citing

14D Wright & Miller § 3807 and analyzing transfer in the FOIA context)).

    As an initial matter, it is indisputable that First Amendment Coalition could have brought its

FOIA claims in the District of Columbia because that is the "all-purpose forum in FOIA cases."

*Sanchez Mora*. 2024 WL 5378335, at *7. Further, as explained below, almost all the factors that the

Court considers while analyzing a transfer motion under Section 1404(a) weigh in favor of transferring

First Amendment Coalitions's FOIA claims to the District of Columbia.

    First, First Amendment Coalition's choice of venue should be afforded minimal weight. A

plaintiff's choice of forum "is not absolute" and "[t]he degree to which courts defer to the plaintiff's

chosen venue is substantially reduced where … the forum chosen lacks a significant connection to the

activities alleged in the complaint." *Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL

253185, *1 (N.D. Cal. Mar. 5, 2001) (granting motion to transfer). Indeed, a plaintiff's choice is

"entitled to 'little deference'" where most allegations in the complaint occurred in the transferee district

and the other challenged conduct occurred in another district "situated a substantial distance" away from

the plaintiff's chosen forum. *Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, *2-

MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND
AUTHORITIES
No. 3:25-cv-02881-AMO

3 (N.D. Cal. Nov. 5, 2019) (transferring action out of Northern District of California where "none of the negligent conduct is alleged to have occurred in the Northern District" and "the majority of plaintiff's allegations concern events occurring in [Kansas]"); *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016) (transferring case to Eastern District of California where "[a]ll of the events giving rise to plaintiff's claims occurred in Fresno" and "[t]he thrust of plaintiff's case" concerned his treatment at mental health facilities in Fresno). Moreover, "[a]s deference accorded to a Plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*, No. C 06-3805 JSW, 2006 WL 2850054, *3 (N.D. Cal. Oct. 5, 2006) (granting motion to transfer where despite some connections to the Northern District, "the facts giving rise to the underlying causes of action have no material connection to this forum"). Here, Plaintiff's choice of forum is entitled to little, if any, weight given that none of the underlying background factual allegations occurred in this District. *See* FAC ¶¶ 11-42. The sole factual predicate in this District, above and beyond First Amendment Coalition's principal place of business in San Rafael, is the possibility that First Amendment Coalition may have mailed its FOIA requests using a local Federal Express service. But even that is mere speculation since it was not specifically plead in the FAC. *Id*. ¶¶ 50, 59 (indicating only the delivery address and not the origin of the mailing).

Other factors weigh heavily in favor of transfer to the District of Columbia: the parties' convenience, the witnesses' convenience, and the ease of access to the evidence factors. At base, this is a FOIA action, very likely to be determined by dispositive motion practice, not trial. *Sanchez Mora*, 2024 WL 5378335, at *8. As a result, First Amendment Coalition will not have to travel to the District of Columbia for trial. And transferring this case to the District of Columbia will pose minimal inconvenience to Plaintiffs' counsel. According to First Amendment Coalition's website, both it and co-Plaintiff MSW Media are represented in this ligation by Kel McClanahan of National Security Counselors, located in Rockville, Maryland, *see* https://firstamendmentcoalition.org/news/post/fac-files-freedom-of-information-lawsuit-against-doge/; ECF No. 13 at 1, which is considered a northwest suburb of Washington, D.C. As such, the District of Columbia is closer for Plaintiffs' lead counsel than this

District. And in contrast, transferring this case to the District of Columbia would be far more convenient for Defendants because the government entities involved—USDS and OMB—are headquartered in that district; almost all of Defendants' witnesses, any FOIA personnel, and government counsel are located in that district or its surrounding areas; and the evidence relating to Plaintiff's pattern or practice claim—founded on conduct of these Washington, D.C. government entities and their policies, practices or standard operating procedures—is situated in that district and/or the surrounding areas. Just as the *Sanchez Mora* court found, all of these predicates militate strongly in favor of transfer to the District of Columbia. *Sanchez Mora*, 2024 WL 5378335, at *8.

The feasibility of consolidation with other claims also weighs heavily in favor of transfer. Absent transfer of First Amendment Coalition's FOIA claims to the District of Columbia, "this case will proceed simultaneously in two different forums because Plaintiffs' claims *cannot* be consolidated in the Northern District of California." *Sanchez Mora*, 2024 WL 5378335, at *8. "Transferring some, but not all, of the Plaintiffs' claims to the District of Columbia would pose significant concerns for judicial economy and would risk inconsistent judicial outcomes." *Id.* (citing *Our Children's Earth Found.*, 2008 WL 3181583, at *4 ("Section 1404(a) was designed to . . . ensure systemic integrity and fairness in the judicial process, and the efficient administration of the court system")). For precisely these reasons, the *Abissi* and *Holmes-Hamilton* courts each transferred the entire case to the District of Columbia. *See Abissi*, 729 F. Supp. 3d at 510-11 (finding that the relevant "factors favor transfer of the entire case [to the District of Columbia], rather than splitting this case in two and requiring it to proceed in a piecemeal manner"); *Holmes-Hamilton*, 2021 WL 5166376, at *5 (ordering that "the case, in its entirety, shall be transferred to the United States District Court for the District of Columbia"); *see also Sanchez Mora*, 2024 WL 5378335, at *10 (transferring the FOIA claims to the District of Columbia).

The remaining factors (*i.e.*, local interest in the controversy, familiarity of each forum with the applicable law, and the relative court congestion and time to trial in each forum) are either neutral or favor transfer. The Northern District of California does not have any special interest in the controversy. Instead, the District of Columbia has a greater local interest in interpreting FOIA in the context of Plaintiffs' lawsuit bearing the novel issue of whether USDS is an agency under FOIA because "it is the

default forum for FOIA lawsuits and many federal agencies, including both Defendants in this case, are

headquartered in or near that district." *Sanchez Mora*, 2024 WL 5378335, at *8. As explained by the

*Sanchez Mora* court, too, "the D.C. Circuit is recognized as 'something of a specialist' in adjudicating

FOIA cases 'given the nature of much of its caseload.'" *Id.* (quoting *Whitaker v. DOC*, 970 F.3d 200,

206 n.25 (2nd Cir. 2020)). And, while Defendants do not question this Court's familiarity with FOIA

law, "the District of Columbia is widely acknowledged as having significant and specialized expertise in

working with the FOIA." *Sanchez Mora*, 2024 WL 5378335, at *8; *see also In re Scott*, 709 F.2d at

720; *Matlack, Inc. v. U.S. EPA*, 868 F. Supp. 627, 630 & n.3 (D. Del. 1994) (the District of Columbia

has "long been on the leading edge" of interpreting the FOIA).

In short, the interest of justice and the convenience of parties and witnesses weigh in favor of

transferring First Amendment Coalition's claims to the District of Columbia under Section 1404(a).

### C. In the Event the Court Retains Any Aspect of the FAC, the Court Should Enter a *Landis* Stay

#### 1. This Court Has the Equitable Power to Issue a Temporary Stay

Federal district courts have the discretionary power to stay proceedings that "'is incidental to the

power inherent in every court to control disposition of the cases on its docket with economy of time and

effort for itself, for counsel, and for litigants.'" *Harville v. Three Wishes Foods, Inc.*, No. 5:22-CV-

04774-EJD, 2023 WL 4535476, *1 (N.D. Cal. July 13, 2023) (quoting *Landis v. N. Am. Co.*, 299 U.S.

248, 254 (1936)). By invoking this power, a district court may stay a case "pending the resolution of

independent judicial proceedings that bear upon the case." *Harville*, 2023 WL 4535476, at *1 (citing

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1997)). A stay is appropriate if

in the Court's judgment "'it is it is efficient for its own docket and the fairest course for the parties to

enter a stay of an action before it'" until those independent proceedings are resolved. *Vance v. Google

LLC*, No. 5:20-CV-04696-BLF, 2021 WL 534363, *3 (N.D. Cal. Feb. 12, 2021) (quoting *Dependable

Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)). Such judgment "'does

not require that the issues in such proceedings are necessarily controlling of the action before the court.'"

*Vance*, 2021 WL 534363, at *3 (*quoting Leyva*, 593 F.2d at 863-64).

The independent proceedings need not be located in the same district or circuit. "Courts in this district have routinely granted stays where there are overlapping issues of fact or law with a case before different district courts or on appeal." *Vance*, 2021 WL 534363, at *3 (citing cases).[4] For example, a stay has been granted where, as here, the resolution of a pending petition at the United States Supreme Court will be significant to the outcome of the district court case. *See, e.g.*, *McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, *1, 5 (N.D. Cal. Mar. 30, 2017) (granting motion for *Landis* stay where after Northern District of California action was filed, the U.S. Supreme Court granted certiorari in another action with similar factual and legal issues and the Supreme Court's disposition of that that case "will significantly impact the instant case"); *Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL 4934205, *6 (N.D. Cal. Nov. 1, 2017) (same).

*Landis* stays should not be indefinite in nature. *Noble v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 22-CV-02879-LB, 2022 WL 4229311, *6 (N.D. Cal. Sept. 13, 2022) (quoting *Dependable Highway Exp., Inc.*, 498 F.3d at 1066) (staying case "pending resolution of" the independent litigation because it "would contribute to the orderly course of justice"; setting status conference in three months and requiring filing of joint status report regarding status of independent litigation seven days prior); *see also Vance*, 2021 WL 534363, at *7 (staying case for one year "or sooner" if the other litigation resolves before that date and also requiring submission of joint status report within 14 days of the earlier of said resolution or one year). And the moving party bears the burden of establishing the need for the stay. *Vance*, 2021 WL 534363, at *3. The Court weighs three factors: "the possible damage to the non-moving party, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice." *Id*. (granting one-year stay after balancing the three *Landis* considerations).[5]

---

[4] It is not the case that *Landis* stays are only granted "in rare circumstances." *Harville*, 2023 WL 4535476, at *3 (rejecting said argument by the non-moving party and instead noting that they are routinely granted).

[5] FOIA's statutory scheme does not change this Court's equitable power to issue a *Landis* stay. *See Campaign for Accountability v. U.S. Dep't of Justice*, 280 F. Supp. 3d 112, 115 (D.D.C. 2017). "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Bd. v. Bannercraft Clothing Co*., 415 U.S. 1, 20 (1974)).

MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
No. 3:25-cv-02881-AMO

20

### 2.     Consideration of the Landis Factors Militates in Favor of a Stay

#### (i)     Possible Damage to the Non-Moving Party

Harm can occur if a litigant is asked to put a pause on litigation "while a litigant in another court settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. But courts generally do not presume delay is harmful without specific supporting evidence of that harm. *Vance*, 2021 WL 534363, at *4.

Harm to the non-moving party does not defeat a request for a stay. As noted recently in this District, "there could be some harm" to a plaintiff's ability to litigate a lawsuit as a result of the stay but this harm can be outweighed by other *Landis* considerations. *Harville*, 2023 WL 4535476, at *2-3 (granting 180-day stay "even where this factor weighs slightly against granting the motion"); *Vance*, 2021 WL 534363, at *5 (finding harm to non-moving party "not significant enough to outweigh the other Landis factors"). In *Harville*, for example, the district court noted that receiving appellate guidance from the Ninth Circuit Court of Appeals on overlapping issues merited greater significance in the overall *Landis* calculus. *Id.* at *3. That is precisely the situation at bar, where Supreme Court guidance in the D.C. Litigation on the question of what kind of inquiry is appropriate to determine whether USDS is an agency subject to FOIA, *supra* at 24, will directly bear on and guide this Court on whether and how this lawsuit should proceed.

Moreover, any harm or delay that Plaintiffs could incur by virtue of a stay is lessened by the fact that—as the *Harville* court found significant—Defendants do not request an open-ended stay and there has been significant activity in the independent appellate proceeding. *See id.* at *2 (noting that the relevant appeals had been briefed and argued); *see also Vance*, 2021 WL 534363, at *5 (noting the independent proceeding "is moving quickly"). This case also is distinguishable from the situation in *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal 2016), where the non-moving party argued that the stay was effectively indefinite because appeals are slow with no predictable date of resolution and the case on appeal had not been briefed or set for argument. *See Harville*, 2023 WL 4535476, at *2 (finding, unlike *Edwards*, "the appeals process is much further along, and a ruling is forthcoming"). Also significant is the existence of an expedited schedule in the independent proceeding,

1   which serves to minimize harm to the non-moving party. *See Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d

2   933, 938 (N.D. Cal. 2015) ("[A]ny generalized risk of delayed litigation is minimized by the fact that the

3   [independent] proceeding is moving forward on a comparatively expedited schedule"). These principles

4   applied to this case militate in favor of a stay; any harm to Plaintiffs is lessened by the fact that the

5   appellate process is moving with alacrity. Indeed, the U.S. Supreme Court in the D.C. Litigation

6   immediately set an expedited briefing schedule on the government's May 21, 2025 application and it is

7   being briefed. *In re U.S. DOGE Service*, No. 24A1122 (May 21, 2025).

8       And while the loss of testimonial or documentary evidence from a delay can constitute harm, that

9   consideration is minimized where, as here, the moving party has taken reasonable steps to preserve

10   relevant evidence. *See Vance*, 2021 WL 534363, at *4. As Defendants informed Plaintiffs in this matter:

> USDS has a policy of preserving all records consistent with its obligations
> under the Presidential Records Act (PRA) and it has directed its
> employees to preserve all PRA records. More specifically, USDS has a
> records retention policy to preserve all work-related communications and
> records, regardless of format. That policy specifically includes (and is not
> limited to) any emails, chats, text messages, and other electronic
> communications to the extent they relate to government business – the
> very types of records the plaintiffs are seeking in this case. The USDS
> records retention policy was circulated to employees on March 25 (which
> was prior to the initiation of this lawsuit) and was circulated again on May
> 8. As to the FOIA requests in this lawsuit in particular, USDS has
> circulated a litigation hold that directs preservation of all materials
> potentially responsive to those requests.

18   As to documents pertaining to Mr. Musk, who is not employee of USDS, *see* FAC ¶¶ 30-31, any

19   communications with Mr. Musk sent or received by USDS employees are so covered. And as

20   Defendants also informed Plaintiffs, Mr. Musk's records are covered by the White House's

21   preservations policies.

22               **(ii)      Hardship or Inequity to Moving Party If Matter Proceeds**

23       "The second *Landis* factor considers the possible harm that could arise from the case going

24   forward." *Vance*, 2021 WL 534363, at *5. "Although it is not necessarily hardship for a party to 'litigate

25   similar claims on a mere two fronts[,]' hardship may nonetheless occur where there is 'the potential for

26   inconsistent rulings and resulting confusion.'" *Id*. (*quoting Hawaii v. Trump*, 233 F. Supp. 3d 850, 854

27   (D. Haw. 2017). "Where a denial of stay would cause both parties to incur significant expenses on

28   MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND
AUTHORITIES
No. 3:25-cv-02881-AMO

1    litigation that may be rendered moot, 'the potential hardship from denying the stay weighs slightly in

2    favor of granting it.'" *Id*. (*quoting Lal v. Capital One Fin. Corp*., No. 16-CV-00674-BLF, 2017 WL

3    282895, *3 (N.D. Cal. Jan 23, 2017)).

4          The *Vance* case in this district is illustrative of the factors this court should strongly consider for

5    a stay. There, the court found that the "harm to moving party" factor "weighs in favor of staying the

6    action," even though Google—unlike here, where USDS and OMB are defendants in both actions—

7    would not be litigating on two fronts. *Id*. In *Vance*, the defendant (Google) requested a stay, arguing that

8    its case shared "significant factual and legal questions" with the independent proceeding, heightening

9    the risk of inconsistent rulings. 2021 WL 534363, at *5. In addition, Google pointed out that a denial of

10   stay would result in substantial discovery that could be rendered moot by rulings in the independent

11   action. *Id*. Of significance to the court's determination that the harm to Google supported a stay were

12   several considerations. First, it concluded that Google would "shoulder additional burdens if a stay is not

13   granted" when in the two proceedings there were "substantial overlapping factual and legal questions,

14   which need not be litigated twice." *Id*. at 6. Second, it found that "many of the overlapping legal issue

15   pose significant constitutional questions, increasing the risk of inconsistent rulings and confusion." *Id*.

16   Third, it concluded that "significant discovery and litigation could be rendered moot by the

17   [independent] action." *Id*. And fourth, the Vance court noted that "without a stay there will be

18   significant overlap in the discovery in both cases, creating additional expenses." *Id*. Other Northern

19   District of California courts have focused on the same factors when granting stays. *See, e.g., Harville*,

20   2023 WL 4535476, at *2 ("both parties would expend additional resources litigating liability theories

21   that may be preempted" and "continuing litigation also poses "'potential for inconsistent rulings and

22   resulting confusion'"); *Noble*, 2022 WL 4229311, at *8 (underlying issues are directing at issue in

23   independent proceeding and "[f]orcing the defendant to concurrently litigate these issues here would

24   impose a hardship because it would risk inconsistent rulings and confusion").

25         Each of these factors is at play in this case, weighing strongly in favor of a stay. First, this case

26   and the D.C. Litigation share overlapping factual and legal issues—that is, whether USDS is an agency

27   for purposes of FOIA and to what extent discovery is necessary to make said determination. Second,

28   MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES

while the District for D.C. and the D.C. Circuit have weighed in on these issues, related issues are now before the Supreme Court and also include significant constitutional questions. Indeed, the government's application not only raises the issue that the district court in *D.C. CREW*, through its discovery order, seriously misinterpreted FOIA but also—in coming to the preliminary viewpoint that USDS is an agency under FOIA and directing production of definitionally deliberative "recommendations"—fundamentally erred in interpreting constitutional separation of powers. *See* Application for Stay Pending Certiorari or Mandamus, *In re U.S. DOGE Service*, No. 24A1122 (May 21, 2025), at 13, 19, 31 (also arguing that the flawed discovery order would cause the Executive Branch irreparable harm). Moreover, even if the Supreme Court were to open the door to limited discovery on the question of whether USDS is an agency for FOIA purposes, *see infra* at 25, the Supreme Court's guidance will direct this court as to how to proceed in this litigation. Finally, precisely because of the overlapping factual and legal issues, a stay is warranted because of the unnecessary expenses that both parties would need to undertake on the fundamental issues that are already being litigated in the D.C. Litigation.

### (iii)    Orderly Course of Justice

Judicial economy, part of the third factor in the *Landis* calculus, is the "primary basis courts consider" when ruling on a stay. *Vance*, 2023 WL 4535476, at *6. Judicial economy in this context means avoiding duplication of case management tasks and thereby preserving resources of the court and parties. *Id*. The court "considers 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Harville*, 2023 WL 4535476, at *3 (quoting *CMAX, Inc.  v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

In *Harville*, the court equated this "orderly course of justice" to awaiting "guidance" from the Ninth Circuit Court of Appeals bearing on the underlying issue of liability. 2023 WL 4535476, at *3. In *Noble*, "orderly court of justice" meant staying the action pending resolution of independent litigation that would clarify the law on similar issues. 2022 WL 4229311, *6. And in *Vance*, the court agreed with Google's argument that "judicial economy favors a stay because there are threshold questions across both cases." 2023 WL 4535476, at *6 (noting overlapping factual and constitutional questions in both cases). These predicate factual and legal questions informed the Vance court's judgment that "judicial

MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
No. 3:25-cv-02881-AMO

1  efficiency counsels that a stay is appropriate pending the resolution of issues in the [separate] action."

2  *Id*. ("[b]y allowing the Illinois [district] court to resolve some of these overlapping issues, significant

3  efficiencies are gained because the Court avoids issuing inconsistent rulings and expending unnecessary

4  judicial resources on mooted issues").

5        So too does the doctrine of judicial economy counsel in favor of the entry of a *Landis* stay while

6  the Supreme Court decides the threshold legal issues of whether the inquiry into FOIA agency status is

7  formal or functional, and whether and what kind of discovery is appropriate in answering that question.

8  Such guidance will direct this Court on key disputed legal issues in this case and potentially prevent the

9  unnecessary expenditure of judicial resources and litigation expenses by both parties. And even if the

10  Supreme Court were to allow limited fact discovery in the *D.C. Crew* district court case, for reasons of

11  judicial economy such a finding also would merit a continued stay in this case. Indeed, fact discovery

12  has already been propounded in the *D.C. Crew* district court case but is currently stayed pending

13  guidance from the Supreme Court.

14  **V.    CONCLUSION**

15        The Court should transfer the entire action to the District of Columbia where venue is

16  appropriate for all claims and parties. If the Court were to retain any part of this action, it should enter a

17  *Landis* stay while threshold legal issues are resolved in the D.C. Litigation. Defendants request a 90-day

18  stay with the accompanying requirement that the parties file a joint status report one week prior to the

19  end of that 90-day period in which they update the Court on the status of the D.C. Litigation and state a

20  joint position (or, if necessary, their respective positions) on whether a continued stay is necessary.

21  DATED: May 27, 2025                    Respectfully submitted,

22                                         CRAIG H. MISSAKIAN
                                           United States Attorney
23
                                           */s/ Kenneth Brakebill*
24                                         KENNETH BRAKEBILL
                                           Assistant United States Attorney
25
                                           Attorneys for Defendants
26

27

28  MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO STAY; MEMORANDUM OF POINTS AND
    AUTHORITIES
    No. 3:25-cv-02881-AMO