UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MSW MEDIA, INC., *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-01933 (JEB) |
| | * | |
| U.S. DOGE SERVICE, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRESERVATION ORDER</u>**

In response to Plaintiff First Amendment Coalition's ("FAC") reasonable Motion for an otherwise routine litigation hold—which should have been imposed automatically by the Government when it received service of the First Amended Complaint—Defendant United States DOGE Service ("USDS") mounts a scattershot defense which clearly demonstrates the need for the requested preservation order better than FAC ever could. USDS's argument can be summed up in two sentences: (1) "[N]either the Amended Complaint nor the motion provides any facts suggesting that USDS would know what phone number Mr. Musk allegedly provided to these officials" (Defs.' Opp'n Pls.' Mot. for Preservation Order, Dkt. #43, at 2 (filed July 25, 2025) [hereinafter USDS's Opp'n]); and (2) "A preliminary injunction is an extraordinary remedy never awarded as of right" (*id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008))). With a few minor exceptions, these statements provide the Court with all it needs to know, and all it needs to know is that USDS fundamentally misunderstands both this Motion and its duties as a defendant in a Freedom of Information Act ("FOIA") lawsuit.

## **ARGUMENT**

It is easier to refute these statements in reverse order, since USDS's entire argument hinges on the Court's acceptance of the second statement, which is factually accurate yet completely irrelevant. USDS makes much of the fact that the Project on Government Oversight ("POGO") requested similar relief in a motion for a preliminary injunction in *POGO v. Trump*, No. 25-527 (D.D.C.). However, the fact remains that while POGO requested a preliminary injunction, *FAC did not*, and for good reason. POGO's lawsuit was over "alleg[ed] violations of the entities' statutory recordkeeping obligations," *Proj. on Gov't Oversight, Inc. v. Trump*, No. 25-527, 2025 U.S. Dist. LEXIS 115488, at *1 (D.DC. June 17, 2025), and so a preliminary injunction to restore the status quo ante was a natural relief for it to seek.

However, this is not a recordkeeping lawsuit. And in this case, despite USDS's varied attempts to encourage the Court to prejudge the merits of its substantive argument, it is inappropriate for the Court to do so at this time, because that is not the standard for review of such motions. FAC does not have to show that it is likely to succeed on the merits of its argument at this juncture because this is not a motion for a preliminary injunction, and "a document preservation order is no more an injunction than an order requiring a party to identify witnesses or produce documents in discovery," *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 n.8 (Fed. Cl. 2004) (citing *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994)), and there is "no reason for [a court] to consider whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction . . . [because] such an approach would be decidedly to put the cart before the horse."). *Id; see also Abdah v. Bush*, No. 04-1254, 2005 U.S. Dist. LEXIS 17189, at *5 (D.D.C. June 10, 2005) (same); *Al-Marri v. Bush*, No. 04-2035, 2005 U.S. Dist. LEXIS 17195, at *2 (D.D.C. Mar. 7, 2005) (same).

Unfortunately for USDS, there is a case directly on point in this regard, also involving Executive Office of the President records that the Government claimed were not subject to FOIA: *Citizens for Responsibility & Ethics in Washington v. Office of Administration*, 565 F. Supp. 2d 23 (D.D.C. 2008) [hereinafter *CREW*]. In that case, the White House Office of Administration ("OA") stopped processing a FOIA request "and therefore did not identify and segregate all possible responsive records[] because it concluded that OA was not, in fact, an agency subject to the FOIA." *Id.* at 29. Despite this fact, the court required the OA to identify and "preserve all records, no matter how described, currently in its possession or under its custody or control, which are potentially responsive to CREW's April 16, 2007 and April 18, 2007 FOIA requests," and further ordered OA not to "transfer any potentially responsive records out of its custody or control without leave of this Court." *Id.* at 26, 31-32 (D.D.C. 2008) (quoting previous unpublished Preservation Order and reaffirming it). This is exactly the case before the Court, with one potential exception which will be discussed below. Because the Court may reasonably rule in USDS's favor on this ultimate question, it should order USDS to identify and preserve the potentially responsive records before they are destroyed.

USDS's first argument fares no better. It proudly admits that it has not taken even the most basic steps to ascertain which records would be potentially responsive to FAC's request. It has not attempted to ascertain "what phone number Mr. Musk allegedly gave these public officials." (USDS's Opp'n at 1.) It has not attempted to ascertain "whether this number was for a personal or government phone." (*Id.*) It has not attempted to ascertain if "Mr. Musk used that phone to create government records." (*Id.*) Simply put, USDS, unlike every other litigant in a federal case, has not taken *a single step* to ascertain if it "know[s] any of this information." (*Id.* at 2.) Instead, USDS asks the Court to require that FAC, unlike every other party who seeks a

3

preservation order in litigation, must specifically identify the records USDS is required to preserve. On the contrary, it is commonly accepted that a party in litigation bears a responsibility to "preserve all records, *no matter how described*, currently in its possession or under its custody or control, which are *potentially*" relevant to the litigation. *CREW*, 565 F. Supp. 2d at 26 (emphasis added). Moreover, in a spoliation case after destruction has already occurred, a court is supposed to assess whether the destroyed information was "*likely* relevant" to the case, not whether it ultimately proved to be *actually* relevant. *Gerlich v. DOJ*, 711 F.3d 161, 171 (D.C. Cir. 2013) (emphasis added). In other words, the scope of a litigant's duty to preserve records is broader than the scope of the records it might have to produce, which means that it must preserve records that the opposing party might never ask for.

Furthermore, in many cases, the duty to preserve records from automatic destruction attaches to a party even before a case is filed or a document request is sent. "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). It would be nonsensical for a court to require a litigant to specifically identify records for preservation before ordering the opposing litigant to preserve records that litigants are regularly required to preserve before they are even sued.[1]

---

[1] Additionally, while discovery is admittedly *uncommon* in FOIA cases, it is not *unknown*, and it is often used when there is a question regarding whether an entity is an agency subject to FOIA. Where there is a chance that discovery may be ordered, traditional discovery principles like records preservation requirements apply, and they continue to apply until the Court rules out *all* chances of discovery. This is why litigants are required to preserve potentially relevant records even if they only reasonably *anticipate* litigation, so that by the time the litigation—and therefore the discovery—takes place, the records have not been destroyed.

However, even if the Court were to impose such a requirement, FAC has satisfied it. FAC identified the records it wants USDS to preserve. FAC formally requested in writing numerous times that USDS obtain (if it does not already have them) and preserve these records. It is now up to USDS to make reasonable efforts to locate potentially responsive records. It is well-established that an agency is required to seek out and enlist the help of an employee responsible for a record if it is unable to identify or locate the record by other means. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 328 (D.C. Cir. 1999). It naturally follows that an agency is required and seek out and enlist the help of an employee who would know how to best conduct a search if it is unable to conduct an adequate search by other means. If USDS destroys these records or allows these records to be destroyed through inaction and the Court rules that FAC's request was legitimate, the weight of spoliation case law will militate in favor of imposing sanctions. FAC would rather have the records.

USDS also implicitly places a lot of weight on the suggestion that FAC is required to prove that the records in question *will* be destroyed absent a preservation order, and that its assertions that USDS is subject to the Presidential Records Act and unspecified other litigation requirements are sufficient to show that they will not. However, such is not the standard for preservation orders. On the contrary, even *Landmark Legal Foundation v. EPA*, where the court held that "the mere 'potential of destruction' is not sufficient to demonstrate the need for [a preservation order]," 910 F. Supp. 2d 270, 279 (D.D.C. 2012), was limited to a case where the plaintiff provided no evidence that the records might be destroyed other than their generalized concern that records might be destroyed because records get destroyed all the time. This complete lack of evidence is what prompted the court to add, "Such a possibility for destruction

of records exists with regard to any FOIA request, yet courts do not routinely issue orders compelling preservation." *Id.*[2]

In this case, in contrast, FAC has demonstrated the significant likelihood that at least some responsive records are almost certain to be destroyed, and USDS's arguments reinforce that expectation. USDS will not even confirm whether the phone in question is a government phone or if it allowed Musk—who openly used Signal to conduct business—to perform work on his personal phone.[3] This is not unfounded speculation or a situation where records *may* be destroyed (although FAC respectfully maintains that a non-negligible risk that records may be destroyed is sufficient for a preservation order). This is a case where the defendant has stuck its head in the sand and practically guaranteed that responsive records will be destroyed.

As noted above, there is one potential distinction between this case and *CREW*. In that case, all of the records in question were indisputedly already in the Government's custody, while there is a chance that some or all of the records responsive to Count 3 are in Musk's personal custody. However, this Court cannot *presume* that either is true, and it should order USDS to immediately provide a definitive answer to that question. If all potentially responsive records are already in the Government's custody, then a straightforward preservation order is appropriate. If

---

[2] However, the Court should also consider that it is not uncommon for courts to issue preservation orders where there is *no* actual risk of destruction. *See, e.g.*, *Al-Marri*, 2005 U.S. Dist. LEXIS 17195, at *2 (issuing preservation order even though "Respondents represent that the information at issue will not be destroyed" because "entering a preservation order will inflict no harm or prejudice upon them"); *Abdah*, 2005 U.S. Dist. LEXIS 17189, at *5 (same, citing *Al-Marri*). If a preservation order is appropriate in cases where the litigant attests that it will preserve the records in question, then it follows that the certainty of actual destruction is not a relevant factor, and that merely gesturing at legal responsibilities to preserve records is not dispositive.

[3] As noted in FAC's Motion, the Signal usage itself would justify this relief due to officials' use of that app to automatically delete messages. *See, e.g.*, Notice, Dkt. #9, at 1 (filed Mar. 28, 2025), *Am. Oversight v. Hegseth*, No. 25-883 (D.D.C.) (memorializing court order to preserve Signal communications from senior agency officials' devices)

all potentially responsive records are *not* already in the Government's custody, either because Musk was using his personal phone or for another reason, then FAC respectfully maintains that the Court should still order USDS to take possession of the records to preserve them from destruction. *Cf. Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 42-44 (D.D.C. 1998) (holding that agencies violate FOIA when they fail to search records an employee improperly secreted from the agency's control); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 159 (1980) (Brennan, J., concurring in part and dissenting in part) (noting the majority's suggestion "that an agency would be improperly withholding documents if it failed to take steps to recover papers removed from its custody deliberately to evade an [sic] FOIA request").

## **CONCLUSION**

The Court should apply the well-recognized rules of evidence preservation and spoliation to this case and order USDS to identify, obtain, and preserve all records which may potentially be relevant to the litigation. In this case, that necessarily entails all records which may potentially be responsive to USDS's FOIA request, although that fact has no bearing on the narrow legal question of whether USDS has a duty to preserve the evidence. The *CREW* litigation ultimately resulted in a holding that the OA "need not comply with CREW's requests because it is not an agency under FOIA." *CREW v. Ofc. of Admin.*, 566 F.3d 219, 226 (D.C. Cir. 2009). That fact does not change the analysis that at the time of the district litigation, the plaintiff *could reasonably have prevailed*. The court even reaffirmed the preservation order after it ruled in favor of the OA because that decision *might be reversed.* The Court cannot hold that USDS *cannot reasonably prevail* on Count 3, and because of that fact, coupled with the demonstrated

risk of destruction of responsive records, it should grant FAC's Motion and issue a Preservation Order.

Date:   July 30, 2025

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*
