UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MSW MEDIA, INC., *et al.*,

Plaintiffs,

v.

UNITED STATES DOGE SERVICE, *et al.*,

Defendants.

Civil Action No. 25-1933 (JEB)

**MEMORANDUM OPINION AND ORDER**

Plaintiff First Amendment Coalition is a nonprofit corporation "dedicated to freedom of speech and government transparency." ECF No. 13 (First Am. Compl.), ¶ 2. Earlier this year, FAC (one of two Plaintiffs in this suit) submitted Freedom of Information Act requests to Defendant United States DOGE Service for records of communications to and from Elon Musk, who Plaintiff alleges oversaw USDS. Id., ¶¶ 40–42, 49, 54. Relevant here, on March 10, 2025, Plaintiff propounded a FOIA request seeking "any record or records of all phone calls made or received" and "all emails or other electronic text communications sent or received" from a specific phone number Musk had distributed to Republican Senators and Transportation Secretary Sean Duffy. Id., ¶¶ 54–55. While the litigation progresses, Plaintiff now moves for an order requiring Defendant to "preserve from destruction all records responsive" to that March FOIA request. See ECF No. 42 (Pl. Mot.) at 1.

**I.     Legal Standard**

"Federal courts have the inherent power to issue orders preserving information relevant to the claims and defenses brought before them." United States *ex rel.* Staggers v. Medtronic, Inc., 2022 WL 4078969, at *2 (D.D.C. Sept. 6, 2022). As this Court has recognized, the need to

1

preserve information is clear in FOIA cases.  See Am. Oversight v. Hegseth, 2025 WL 1721995, at *12 (D.D.C. June 20, 2025).  In such cases, "plaintiffs sue to recover specific records, so the case would become moot if such records were deleted."  Id.

Although courts have the inherent authority to issue preservation orders, "there is no binding authority instructing . . . how to weigh preservation order requests."  Staggers, 2022 WL 4078969, at *2.  Courts have therefore split their approaches.  Some have treated motions to preserve documents as akin to requests for a preliminary injunction.  See Competitive Enter. Inst. v. Off. of Sci. & Tech. Policy, 2016 WL 10676292, at *2 (D.D.C. Dec. 12, 2016).  Others, conversely, have treated such motions as invoking courts' routine case-management powers.  See Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv. (CREW II), 769 F. Supp. 3d 8, 30–31 (D.D.C. 2025) (granting preservation order pursuant to court's inherent authority); Am. Oversight v. U.S. DOGE Serv., 2025 WL 993518, at *1–2 (D.D.C. Apr. 2, 2025) (same).  The Court need not resolve that legal question in the context of this Motion, as Plaintiff satisfies the more demanding standard for a preliminary injunction.  Compare Am. Oversight, 2025 WL 993518, at *1–2 (under inherent-authority standard, considering only risk that records would be destroyed and could not be recovered), with Competitive Enter., 2016 WL 10676292, at *2–4 (under preliminary-injunction standard, considering those risks plus plaintiff's likelihood of success, balance of equities, and public interest).

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Sherley v. Sebelius, 644 F.3d 388,

392 (D.C. Cir. 2011) (alterations in original) (quoting Winter, 555 U.S. at 20). "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted." Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## II.  Analysis

Begin with FAC's likelihood of success on the merits. See Winter, 555 U.S. at 20–21. When evaluating this factor in the context of a preservation order, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." Competitive Enter., 2016 WL 10676292, at *2 (quoting Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)); see also Cause of Action Inst. v. U.S. Dep't of Just., 2019 WL 12070403, at *1 n.1 (D.D.C. Apr. 25, 2019) (adopting "relaxed standard" for purposes of preservation order). Plaintiff's FOIA request does indeed raise serious issues, such as whether Musk was a USDS employee whose records would fall within the Service's purview. See Pl. Mot. at 4 (alleging that Musk oversaw USDS); ECF No. 43 (Def. Opp.) at 2 (responding that Musk was member of White House Office and not USDS employee). At least one court has found a plausible inference that Musk was "the *de facto* Administrator of DOGE." Does v. Musk, 2025 WL 2346258, at *19 (D. Md. Aug. 13, 2025).

Second, Plaintiff would likely suffer irreparable harm in the absence of a preservation order. See Winter, 555 U.S. at 22–23. FAC contends that such an order is necessary because "USDS — and presumably Musk — used the messaging app Signal to conduct official business for at least several months, which allows messages to be set to disappear after a designated

3

period of time." Pl. Mot. at 2–3. Plaintiff further argues that, rather than stipulating that it would preserve responsive records, USDS stuck its head in the proverbial sand by "contend[ing] that Musk was not a USDS employee" and "refus[ing] to answer even basic questions . . . such as if the cell phone in question is even in Government custody or if it was Musk's personal cell phone." Id. at 2, 3. While not engaging in an irreparable-harm analysis, courts in this district have found such circumstances — allegations of Signal use and a refusal to assure preservation of responsive records — sufficient to warrant a preservation order against USDS. See, e.g., CREW II, 769 F. Supp. 3d at 30–31. This Court joins their company, concluding that the threat of deletion and the Government's refusal to assure preservation of potentially responsive records during the pendency of this litigation present a risk of irreparable harm. See Citizens for Resp. & Ethics in Wash. v. Off. of Admin. (CREW I), 565 F. Supp. 2d 23, 30 (D.D.C. 2008) (finding that plaintiff "would have absolutely no recourse in the event that records potentially responsive to its FOIA requests were destroyed").

FAC must also show "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20; see also Nken v. Holder, 556 U.S. 418, 435 (2009) (noting that two factors "merge when the Government is the opposing party"). The public interest favors a preservation order here given that the "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). If USDS is an agency and Musk an employee, "the result will be that [USDS's] information is subject to disclosure[] and belongs to all." CREW I, 565 F. Supp. 2d at 31 (quotation marks, original alteration, and citation omitted).

The Government, moreover, will not suffer significant harm if it is ordered to preserve information that is potentially responsive to Plaintiff's FOIA request. To be sure, FOIA imposes

no obligation on agencies to create new records or produce records for which they do not "retain possession or control." Kissinger v. Reporters Comm., 445 U.S. 136, 152 (1980). Agencies, nevertheless, must "make good faith efforts to conduct reasonable searches for all records that are responsive to FOIA requests." Jud. Watch, Inc. v. Bd. of Governors of Fed. Rsrv. Sys., 773 F. Supp. 2d 57, 59 (D.D.C. 2011) (citing Baker & Hostetler LLP v. U.S. Dep't of Com., 473 F.3d 312, 318 (D.C. Cir. 2006)). As part of that effort, an agency should search for records within its possession and ensure that responsive materials have not been improperly removed. Cf. Jud. Watch v. U.S. Dep't of Com., 34 F. Supp. 2d 28, 44 (D.D.C. 1998) (explaining that allowing agencies to remove responsive documents would "render the FOIA hollow and the courts powerless to intervene").

USDS objects to a preservation order on the ground that "Musk was a member of the White House Office, not a USDS employee." Def. Opp. at 2. That argument, however, "go[es] to the underlying merits rather than DOGE's obligations to preserve documents when litigation is reasonably anticipated or pending." Am. Oversight, 2025 WL 993518, at *1 (citation omitted). The circumstances of this case mirror those of CREW I. There, a watchdog organization submitted a FOIA request to the Office of Administration seeking records relating to the White House's alleged loss of e-mail records. See 565 F. Supp. 2d at 24. Once the organization commenced litigation to compel disclosure, OA moved to dismiss the action on the ground that the Office was not an agency subject to FOIA. Id. While the court eventually agreed with OA on that score, during the course of litigation, it issued an order requiring OA to "preserve all records, no matter how described, currently in its possession or under its custody or control, which are potentially responsive." Id. at 26 (quotation marks omitted). The court explained that the organization would be significantly disadvantaged if it prevailed in its FOIA

5

claims "but could not ultimately access the documents responsive to its FOIA request because they had not been preserved." Id. at 30. FAC faces the same fate were USDS deemed an agency and Musk an employee of that agency.

Defendant further argues that a preservation order is unwarranted because USDS "has submitted sworn declarations in other litigation . . . recogniz[ing] its obligations to comply with the Presidential Records Act" and because the Service is "subject to broad preservation orders as a result of other litigation." Def. Opp. at 3. This Court has held, in a separate matter, that those declarations and orders sufficiently obviated the need for further litigation holds. Project on Gov't Oversight, Inc. v. Trump, 2025 WL 1707690, at *5–7 (D.D.C. June 17, 2025).

That case is not a direct parallel, however. USDS's declarations there, made in a non-FOIA case challenging adherence to recordkeeping requirements, stated that the Service would honor its PRA obligations writ large. Id. at *5. Given that USDS disputes that Musk was an employee, it is not clear that the Service would consider his communications subject to their declared recordkeeping obligations. Preservation orders in other cases, moreover, require USDS to preserve records pertaining to communications between OMB and Musk as well as communications between Musk and "anyone communicating on behalf of Tesla, SpaceX, Starlink, The Boring Company, xAI, X, Neuralink, and several other external entities." Id. at *7. Since Plaintiff seeks different communications, it is also unclear how those preexisting orders would preserve the records sought here. While the Court "presumes that executive officials will act in good faith," CREW I, 565 F. Supp. 2d at 30 (citing Armstrong v. EOP, 1 F.3d 1274, 1293 (D.C. Cir. 1993)), it "need not make a finding of bad faith in order to enter a document preservation order." CREW II, 769 F. Supp. 3d at 31; see also CREW I, 565 F. Supp. 2d at 31 (noting that despite presumption of good faith, plaintiff lacked recourse "absent a Court Order"

requiring preservation and "punishable by contempt").

### III.   Conclusion

For the aforementioned reasons, the Court ORDERS that:

1. Plaintiff's [42] Motion for Preservation Order is GRANTED;

2. Defendant United States DOGE Service shall make a good-faith effort to identify and preserve from destruction copies of all records potentially responsive to Count III of this suit; and

3. Defendant shall file a Notice by September 11, 2025, informing the Court of the steps it has taken.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: August 28, 2025