UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MSW MEDIA, INC., *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 1:25-cv-01933 (JEB) |
| U.S. DOGE SERVICE, *et al.*, | * |
| Defendants. | * |

## **PLAINTIFF'S MOTION TO COMPEL**

On 28 August 2025, this Court ordered Defendant United States DOGE Service ("USDS") to "make a good-faith effort to identify and preserve from destruction copies of all records potentially responsive to Count III of this suit; and . . . file a Notice by September 11, 2025, informing the Court of the steps it has taken." *MSW Media, Inc. v. U.S. DOGE Serv.*, No. 25-1933, 2025 U.S. Dist. LEXIS 167989, at *9 (D.D.C. Aug. 28, 2025). On 11 September 2025, USDS filed a declaration from Robert Eisenhauer, which stated, in pertinent part:

> 4. Upon joining the White House Office, Mr. Musk was provided with both an EOP issued, government cell phone (202.881.5010) and laptop, hereinafter referred to as "EOP phone" or collectively as "EOP devices." . . .
>
> 6. The White House Office has taken all necessary steps to preserve all White House Office records consistent with its obligations under the Presidential Records Act (PRA).
>
> 7. Written communications on EOP devices are captured. EOP phones are configured to not allow for written communications other than email. The default email application used by EOP devices is Microsoft Outlook for computers and the native Apple mail application for all iOS devices. All emails sent using the default application, whether from a phone or from a laptop, are captured in Exchange. Because of the requirements under the Presidential Records Act, the retention policy for all EOP employees, including the White House Office, is set to permanent.

> 8. Mr. Musk's EOP phone was not granted any exceptions for written communications (e.g., texting, Signal) other than email. . . .
>
> 10. I can confirm that all records of all communications created or received on his EOP devices have been preserved.

(Eisenhauer Decl., Dkt. #47, ¶¶ 4-10 (filed Sept. 11, 2025).)

However, this declaration neither fully responds to the Court's order nor can be reconciled with other publicly known information, and Plaintiff First Amendment Coalition ("FAC") accordingly requests that the Court compel USDS to supplement this declaration with specific information addressing these omissions and ambiguities.

First, FAC spent a great deal of time demonstrating that there was a significant likelihood that Elon Musk ("Musk") did not *use* a Government-issued phone to conduct his business, and specifically asked that the Court order USDS to locate *and obtain, if necessary*, responsive records, including any records which were created on a non-Government device. The Court accordingly ordered USDS to *identify* and preserve all potentially responsive records, which would logically include any records not created on the "EOP phone." In response, USDS merely stated that Musk had been *issued* a Government phone and that all records *from that phone* had been preserved, without ever actually stating that the records being requested by FAC were *on* that phone.

Second, Eisenhauer states that EOP devices "are configured to not allow for written communications other than email." (Eisenhauer Decl. ¶ 7.) However, it is well-known that numerous EOP officials were using Signal during the so-called "Signalgate" scandal. *See*, *e.g.*, Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans* The Atlantic (Mar. 24, 2025), *available at* https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/ (last accessed Oct. 3, 2025). While

USDS may argue that evidence of Signal use from March does not affect the veracity of a declaration written in August, White House officials continue to use Signal as recently as last week. On 3 October 2025, the *Minnesota Star Tribune* wrote, "Anthony Salisbury, a deputy to White House top policy adviser Stephen Miller, sent the texts over the private messaging app Signal while traveling in Minnesota and in clear view of others. Troubled by seeing sensitive military planning discussed so openly, a source contacted the Star Tribune and allowed a reporter to review images of the texts. Over the course of several conversations, totaling dozens of messages, Salisbury chatted candidly, and at times profanely, about a wide range of matters with Hegseth's adviser Patrick Weaver and other high-ranking federal officials." Andy Mannix, *Trump officials discussed sending elite Army division to Portland, text messages show* Minn. Star Tribune (Oct. 3, 2025), *available at* https://www.startribune.com/trump-officials-discussed-sending-elite-army-division-to-portland-text-messages-show/601485729 (last accessed Oct. 3, 2025). White House and Department of Defense officials implicitly admitted the existence of these Signal messages in comments to the media. *See id.* (quoting White House spokesperson Abigail Jackson as saying how the "private conversations" showed that Salisbury "continued his important work on behalf of the American people" and a Defense Department official as sayig that "the messages show officials were 'working around the clock'").

      Given this evidence that even mid-level White House employees continue to use Signal and that it is commonplace enough for officials to not comment on it when questioned, the Court should not be satisfied with Eisenhauer's banal statements about the restrictions placed on electronic devices or whether one of the President's most senior advisers was given permission to use Signal or other apps. In fact, even if Eisenhauer's statement is true, that further supports the implication that Musk—known to be an avid Signal user—did not use his "EOP phone" to

conduct business, and shows that it is vitally important that the Government must ascertain—if it does not already know—exactly what devices he used while employed at the White House and collect and preserve all potentially responsive records from those devices.

USDS's counsel could not be reached due to the Government shutdown, so this Motion is being filed as an opposed Motion. A proposed Order is attached.

Date:   October 3, 2025

                                            Respectfully submitted,

                                             /s/ Kelly B. McClanahan
                                            Kelly B. McClanahan, Esq.
                                            D.C. Bar #984704
                                            National Security Counselors
                                            1451 Rockville Pike
                                            Suite 250
                                            Rockville, MD  20852
                                            501-301-4672
                                            240-681-2189 fax
                                            Kel@NationalSecurityLaw.org

                                            *Counsel for Plaintiffs*