## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MSW MEDIA, INC., et al.,

            Plaintiffs,

        v.                                              Civil Action No. 1:25-cv-01933 (JEB)

U.S. DOGE SERVICE, et al.,

            Defendants.

### RESPONSE TO MOTION TO COMPEL

As ordered by this Court in its December 4, 2025, minute order, Defendant United States DOGE Service (USDS) submits this response to Plaintiff First Amendment Coalition's motion to compel.  *See* ECF No. 48 (Mot.).

1.      Plaintiff previously moved for a preservation order directing USDS to preserve records from a phone belonging to Elon Musk.  *See* ECF No. 42.  On August 28, 2025, the Court granted Plaintiff's motion and directed USDS to "make a good-faith effort to identify and preserve from destruction copies of all records potentially responsive to Count III of this suit."  ECF No. 46 (Order) at 7.  The Court ordered USDS to file a notice of compliance by September 11.  *See id.* On that day, USDS filed the required notice alongside a declaration from Robert Eisenhauer, the Director of White House Information Technology.  *See* ECF No. 47 at 2–3 (Eisenhauer Decl.).

That declaration affirmed that Musk "joined the White House as a Senior Advisor to the President" and served in that position until resigning on May 28, 2025.  *Id.* ¶ 3.  "Upon joining the White House," Musk "was provided with" a phone issued by the Executive Office of the President (EOP).  *Id.* ¶ 4.  Like other EOP-issued phones, Musk's phone was not configured to "allow for written communications other than email," *id.* ¶ 7, and "was not granted any exceptions for written

communications (e.g., texting, Signal) other than email," *id.* ¶ 8. His phone was returned to EOP upon his departure and, like all other EOP devices, the written communications on that phone were captured. *See id.* ¶¶ 7, 9–10.

2.      Plaintiff asserts that this notice, including the Eisenhauer Declaration, does not "fully respond[] to the Court's order." Mot. 2. According to Plaintiff, that order's directive to identify responsive records "would logically include any records not created on the 'EOP phone,'" *i.e.*, on some personal phone that Musk might have used. Mot. 2.

USDS has complied with this Court's order. USDS worked in conjunction with the White House Office—an entity that is not a defendant in this suit—to ensure that all records on Musk's EOP-issued phone were preserved. *See* Eisenhauer Decl. ¶ 6. That action is entirely consistent with this Court's directive to identify and preserve potentially responsive records. USDS has done so, even though Musk was never issued a phone by USDS and was never an employee of USDS. *See id.* ¶ 5. In short, all data on Musk's government-issued phone has been preserved. Plaintiff cannot seriously suggest that USDS failed to make a good-faith effort given that USDS ensured preservation of records from a phone it did not even issue.

As for Plaintiff's suggestions about Musk's personal phone, there is no well-pleaded allegation in the Amended Complaint that the phone number Musk allegedly offered to Republican senators and to Secretary Duffy was *not* his EOP-issued phone. *See* ECF No. 13 ¶ 38 (alleging that Musk offered a phone number, but without specifying which phone number he offered). USDS therefore cannot assume that the phone number Musk offered was his private phone number. And the good-faith effort required by this Court does not require USDS to search a private phone based on a lack of specific allegations, regardless of what Plaintiff thinks was "logically include[d]" in the Court's order. Mot. 2. That order does not require USDS to assume that an

employee violated the policy to conduct official work on government issued devices. Rather, USDS has undertaken the "good-faith effort" required by that order by ensuring that all records on the phone issued by EOP are preserved. Order at 7.

**3.**    Plaintiff also urges this Court to reject that EOP had not installed Signal on Musk's phone. *See* Mot. 2–4. Dismissing Mr. Eisenhauer's sworn statement to the contrary as "banal," Plaintiff cites two news articles about instances in which EOP personnel used Signal (1) in March 2025 to discuss bombings against the Houthis in Yemen and (2) in October 2025 to discuss deploying the National Guard in Oregon. *Id.* According to Plaintiff, these uses of Signal, combined with Musk's own supposedly "avid" Signal usage, must mean that Musk used Signal during his time in government to create potentially responsive records. *Id.*

This is wrong, and the Court should accept Mr. Eisenhauer's affirmation—made under penalty of perjury—that Musk's EOP-issued phone did not have Signal. Although the cited articles discuss certain conversations on Signal, neither article suggests that Musk participated in those particular conversations. Indeed, one of them postdates his time in the government. *See* Eisenhauer Decl. ¶ 3 (noting Musk resigned in May 2025). Moreover, neither article says that these Signal conversations occurred on EOP-issued phones, rather than personal ones. But even if they did, the Eisenhauer Declaration mentions that EOP can grant "exceptions for written communications (e.g. texting, Signal) other than email." *Id.* ¶ 8. That other EOP personnel might have received such exceptions—and there is nothing in either article or in Plaintiff's motion suggesting that the EOP personnel in those Signal conversations did or did not receive exceptions—does not mean that Musk received one. Thus, the only evidence before the Court is that Musk did not receive an exception to install Signal on his phone. *See id.* Plaintiff cannot essentially accuse Mr. Eisenhauer of dishonesty based on news articles about other EOP personnel

who might have received an exception.  And Plaintiff has not substantiated its claim that Musk

was an "avid Signal user" at the time.  Mot. 3.

    **4.**      USDS requests that the Court deny Plaintiff's motion to compel.

Dated: December 15, 2025                  Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch, Civil Division

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*