UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MSW MEDIA, INC., *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-01933 (JEB) |
| | * | |
| U.S. DOGE SERVICE, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL

Defendant United States DOGE Service ("USDS") goes to great lengths to redefine what "a good-faith effort to identify and preserve from destruction copies of all records potentially responsive to Count III of this suit," *MSW Media, Inc. v. U.S. DOGE Serv.*, No. 25-1933, 2025 U.S. Dist. LEXIS 167989, at *9 (D.D.C. Aug. 28, 2025), looks like, and then it falls back on its standard argument that the Court should not question its declaration because of the presumption of good faith. Unfortunately for the Government's argument, even if the Court were to uncritically accept every word of the Eisenhauer Declaration, that would not naturally lead to a conclusion that USDS had made "a good-faith effort," because a good-faith effort is not the same as a token effort. *See generally Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017) ("Due diligence [in determining the identity of a pseudonymous defendant] is not exercised by . . . token discovery requests."); *Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186-87 (3d Cir. 2003) (distinguishing token efforts from good faith efforts to resolve discovery disputes); *Sistem Mühendislik Insaat Sanayi Ve Ticaret v. Kyrgyz Republic*, No. 12-4502, 2020 U.S. Dist. LEXIS 208487, at *11 (S.D.N.Y. Nov. 5, 2020) (describing discovery response as a "token production that did not represent a meaningful or good-faith effort to comply").

The key problem with the Eisenhauer Declaration is not what it says, but what it does *not* say. The Declaration states that Elon Musk ("Musk") "'was provided with' a phone issued by the Executive Office of the President (EOP)." (Def.'s Resp. Mot. Compel, Dkt. #51, at 1 (filed Dec. 15, 2025) [hereinafter Def.'s Resp.].) It did not say that Musk *used* the EOP phone, or even that anyone in the Government *suspected* him of using the EOP phone. Most tellingly, it did not say that *anyone anywhere even asked about it*. Therefore, the only statement on this point in the Declaration which is entitled to a presumption of good faith is the statement that Musk was issued an EOP phone, which nobody disputes.

In an attempt to cloak its lack of due diligence in the presumption of good faith, the Government then complains that the Court cannot question the statement that Musk's EOP phone did not come with Signal installed. However, by doing so, it misses one of the main points. Musk is a long-time devoted Signal user. As early as 7 January 2021, Musk posted a simple message on social media: "Use Signal." Elon Musk (@elonmusk), X.com (Jan. 7, 2021 7:56 AM), *at* https://x.com/elonmusk/status/1347165127036977153 (last accessed Dec. 26, 2025). This one tweet caused such a surge in new Signal users that it caused a delay. Jack Morse, *Elon Musk's Endorsement of Signal is causing the good kind of problems*, Mashable (Jan. 7, 2021), *at* https://mashable.com/article/elon-musk-signal (last accessed Dec. 26, 2025).

More recently, the *New York Times* reported, citing "people who have insight into DOGE's operations," that "[p]eople involved in the operation say that secrecy and avoiding leaks is paramount, and much of its communication is conducted on Signal, the encrypted messaging app." Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs* N.Y. Times (Jan. 12, 2025), *available at* https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html (last

accessed Dec. 26, 2025). This claim is supported by a public blog post by Vinay Hiremath, who worked with the nascent Department of Government Efficiency late last year: "After 8 calls with people who all talked fast and sounded very . . . smart, I was added to a number of Signal groups and immediately put to work. . . . Within 2 minutes of talking to the final interviewer for DOGE, he asked me if I wanted to join. I said 'yes.' Then he said 'cool' and I was in multiple Signal groups." Vinay Hiremath, *I am rich and have no idea what to do with my life*, Substack (Jan. 3, 2025), *at* https://eriktorenberg.substack.com/p/i-am-rich-and-have-no-idea-what-to (last accessed Dec. 26, 2025). These are but a sample of the stories describing the widespread use of Signal by Musk and DOGE, and the Government simply asks this Court to disregard it because an EOP official said that Musk was provided an EOP phone on which Signal was not installed.

Even if Mr. Eisenhauer is telling the truth, that would be meaningless in the context of this Motion. As Plaintiff previously stated, such a prohibition on using Signal on an EOP phone would only *increase* the likelihood of Musk using a different phone. USDS's arguments over the "Signalgate" controversy even suggest that such a conclusion would be unsurprising: "Moreover, neither article says that these Signal conversations occurred on EOP-issued phones, rather than personal ones." (Def.'s Resp. at 3.) The Government indifferently proposed that the Court should consider the reasonable possibility that the White House participants in that Signal chat had been using their personal phones to conduct official business on Signal, while simultaneously asking the Court to completely disregard the equally reasonable possibility that Musk had been using his personal phone to conduct official business on Signal. The Government cannot have it both ways. If the prospect of numerous EOP officers who have been issued EOP phones using their personal devices to conduct official business is so unremarkable that it is casually mentioned

3

without any qualifications in a legal brief, then that fact by itself belies the Government's argument.

In the final analysis, this Court should reject the Government's minimal definition of a good-faith effort. Contrary to the Government's complaints, Plaintiff is not asking the Court to "require USDS to search a private phone based on a lack of specific allegations." (*Id.* at 2.) Plaintiff *is* asking the Court to require USDS to make a good-faith effort to ascertain if Musk used a private phone—or in fact any phone or service, such as Google Voice,[1] besides the EOP phone—to conduct official business, the same as if Plaintiff had propounded an interrogatory asking the Government, "Did Musk use any phones besides the EOP phone to conduct official business?" If the answer to that question is yes, *then* the Court should require USDS to identify and preserve responsive records on those phones. It is a simple yes or no question, and the Government's stubborn refusal to answer it falls far short of a good-faith effort.

Date:   December 26, 2025

                                                     Respectfully submitted,

                                                      /s/ Kelly B. McClanahan
                                                     Kelly B. McClanahan, Esq.
                                                     D.C. Bar #984704
                                                     National Security Counselors
                                                     1451 Rockville Pike
                                                     Suite 250
                                                     Rockville, MD  20852
                                                     501-301-4672
                                                     240-681-2189 fax
                                                     Kel@NationalSecurityLaw.org

                                                     *Counsel for Plaintiff*

---

[1] A Signal account must be attached to a telephone number, but it does not require a physical phone. For instance, a Google Voice number is not associated with a physical phone, but a Signal account can be attached to it.