**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MSW MEDIA, INC.**, *et al.*,<br><br>  **Plaintiffs,**<br><br>  **v.**<br><br>**UNITED STATES DOGE SERVICE**, *et al.*,<br><br>  **Defendants.** | **Civil Action No. 25-1933 (JEB)** |

**<u>ORDER</u>**

First Amendment Coalition is one of two Plaintiffs in this case requesting documents

from Defendant United States DOGE Service under the Freedom of Information Act.  In

particular, FAC seeks "any record or records of all phone calls made or received" and "all emails

or other electronic text communications sent or received" from a specific phone number Elon

Musk distributed to Republican Senators and Transportation Secretary Sean Duffy.  <u>See</u> ECF

No. 13 (First Am. Compl.), ¶ 55.  The Court previously concluded that FAC had demonstrated

the need for a preservation order and thus directed the Government to preserve all records

responsive to Plaintiff's FOIA request.  <u>See</u> ECF No. 46 (Preservation Ord.) at 7.  USDS then

informed the Court that it had saved "all communications created or received on" Musk's

government-issued phone.  <u>See</u> ECF No. 47 (Gov. Not.), ¶ 10.  Finding that response lacking,

FAC filed a Motion to Compel, asserting that Musk had conducted government business on

private phones, including the one referenced above, and that USDS must therefore locate and

preserve records from those devices as well.  <u>See</u> ECF No. 48 (Mot. to Compel) at 2.  FAC did

not know the specific phone number Musk used, however, and Defendants disclaimed any

knowledge of his using personal devices for government work.

1

After holding a hearing on the matter, the Court issued a Minute Order directing the Government to "make a good-faith inquiry of Secretary Duffy and the applicable Senators whether they have a record of or can recall any telephone number(s) that Elon Musk gave to them between January 20 and May 31, 2025." Minute Order of Feb. 3, 2026. USDS has now filed a Motion for Reconsideration of the portion of that Order concerning Senators, see ECF No. 55 (Mot. for Recons.), which the Court will grant in part and deny in part. USDS must still make a good-faith effort to identify any possible phone numbers used by Musk for government business. The Court will modify its Minute Order, however, to provide the Government with an option for doing so that differs from contacting Senators.

USDS's Motion for Reconsideration asserts multiple objections to the Court's February 3 Order. For example, it protests that requiring it to ask Senators for information amounts to an end run around Congress's exclusion from FOIA obligations. Id. at 2. It also maintains that such a proactive investigation exceeds what FOIA requires the Government to do when faced with a disclosure request. Id. at 2–4.

It is true that Congress is exempt from FOIA's disclosure obligations, see 5 U.S.C. § 551(1)(A), and that agencies have no duty under the statute to acquire new records of which they do not already retain possession or control. Kissinger v. Reporters Comm., 445 U.S. 136, 152 (1980). But the Court's Order is not limited by the reach of FOIA. On the contrary, "[f]ederal courts have the inherent power to issue orders preserving information relevant to the claims and defenses brought before them." United States ex rel. Staggers v. Medtronic, Inc., 2022 WL 4078969, at *2 (D.D.C. Sept. 6, 2022). The Court has thus tasked USDS with inquiring about Musk's number so that the relevant records may be identified for preservation. If Musk did conduct government business on a private phone, the related communications would

be equally subject to disclosure — and equally critical to preserve — as any records on his government-issued phone.  In this sense, the information USDS is asked to acquire serves a purely intermediate function: identifying Musk's number helps it preserve the records that are the actual subject of Plaintiff's FOIA request.  That single piece of information the Government would obtain — Musk's number — need not be disclosed to Plaintiff in the end.  USDS's concerns about the applicability and scope of FOIA are thus misplaced; Musk's number is not the subject of Plaintiff's FOIA request, and its acquisition is not governed by the bounds of that statute.  Citizens for Resp. & Ethics in Washington v. Off. of Admin., 565 F. Supp. 2d 23, 30 (D.D.C. 2008) (ordering agency to take steps to preserve documents requested under FOIA even when applicability of FOIA to agency was in question).

While there may be a limit to what actions USDS can reasonably be expected to undertake in service of a preservation order, that limit would come from this Court's assessment of the good faith of the Government's efforts, not the contours of FOIA's disclosure obligations. In any case, the Court finds that USDS's efforts so far have not come close to that limit.  The Government's worries about a slippery slope of ever-expanding preservation obligations are therefore premature; there will be ample opportunity in future proceedings for the parties and this Court to carefully consider if further preservation measures are needed and what form those measures may take.

USDS additionally raises vague separation-of-powers concerns with ordering the Executive Branch to contact Senators.  See Mot. for Recons. at 1–2.  In doing so, it provides no relevant case, constitutional provision, or even line of reasoning to support its argument, and the Court remains dubious of the merits of such an objection.  Still, the Court will modify its Minute Order to remove the Senator-inquiry mandate, as it believes a different line of investigation may

be equally fruitful while avoiding USDS's concerns.  At the hearing and in its briefing, Plaintiff

raised the possibility that USDS could instead review its own records to search for any mentions

of Musk's private phone number.  See ECF No. 56 (Opp.) at 2.  The Government objected to that

course of action, arguing that doing so would concede that USDS is an "agency" subject to FOIA

requirements.  See ECF No. 57 (Reply) at 1.  As explained above, however, the Government's

obligations under a preservation order are distinct from its FOIA obligations; whether USDS is

an "agency" for the purposes of FOIA is thus not relevant here.  Am. Oversight v. U.S. Dep't of

Gov't Efficiency, 2025 WL 993518, at *1 (D.D.C. Apr. 2, 2025) ("To the extent that defendants

argue that it is not subject to FOIA, those arguments go to the underlying merits, rather than

DOGE's obligations to preserve documents when litigation is reasonably anticipated or

pending.") (citations omitted).  Believing that this course of action is both productive and

permissible, and in light of the Government's objection to its first proposal, the Court will order

a review of USDS records instead.  For these reasons, the Court ORDERS that:

1. Defendant's [55] Partial Motion for Reconsideration is GRANTED IN PART and
   DENIED IN PART;

2. The Court's February 3, 2026, Minute Order is VACATED;

3. Defendant United States DOGE Service shall take the following steps to comply with
   the Court's Preservation Order: 1) Make a good-faith inquiry of Secretary Duffy
   whether he has a record of or can recall any telephone number(s) that Elon Musk
   gave to him between January 20 and May 31, 2025; and 2) Review USDS devices
   and records to identify any telephone number(s) Elon Musk may have used to
   communicate with government officials between January 20 and May 31, 2025; and

4.  Defendant shall file a Notice by April 3, 2026, informing the Court of its efforts and

any accompanying results.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  March 19, 2026