**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MSW MEDIA, INC., *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-01933 (JEB) |
| | * | |
| U.S. DOGE SERVICE, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**DECLARATION OF JASON COUNTS**

I, JASON COUNTS, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge and in support of Plaintiffs.

2.      I am a Digital Forensics & Cybersecurity expert with over 30 years of experience in the field. Most of my career has been spent in top-tier financial and telecommunications industries, working directly as a network security engineer and architect. In plain English, that means I have spent three decades building the digital vaults that keep highly sensitive information safe, and I become a detective when someone tries to break into them or hide things inside them. I know exactly how data moves across networks, where it hides when people delete it, and how to find it when others think it is gone forever.

3.      I have also spent several years educating others on these complex topics and their implications in regards to digital privacy. I have participated in speaker panels at George Washington University School of Law, St. Louis University, and Harris-Stowe State University on behalf of the ACLU and the Electronic Frontier Foundation regarding digital privacy issues and have contributed to projects such as the Surveillance Self-Defense project at eff.org. I strive

Ex. A

to help students, lawyers, journalists, and the general public understand exactly what digital footprints we all leave behind when we use modern technology, and how best to protect those assets.

4.    I have direct, hands-on experience handling cyber incidents for the government itself. I worked for several years as a DFIR (Digital Forensics and Incident Response) engineer for CISA EI-ISAC, which is the federal agency responsible for defending our nation's critical election infrastructure. I have investigated exactly how government systems are configured, how they back up their data, and how digital searches should be conducted.

5.    I hold the following Information Technology certifications: Microsoft Certified Profession, Security; Palo Alto Networks Security Engineer; Cisco Certified Design Professional; and Cisco Certified Network Profession with Security Focus.

6.    I have read the Status Report filed by the U.S. DOGE Service (USDS) on April 3, 2026.

7.    I understand that the court asked USDS to find and identify any phone numbers Elon Musk used to conduct official government business and communicate with government officials between January 20 and May 31 of 2025.

8.    According to the USDS Status Report, they first searched through their electronic files—basically their digital filing cabinets. But the way they searched was incredibly narrow. They only looked for the words "Elon" or "Musk" if those words were typed within three words of the words "phone," "cell," or "number".

9.    Here is the first glaring issue: they completely ignored his actual, known user accounts and email addresses. We know for a fact from organizational records that he uses addresses like Elon.musk@SpaceX.com, ermt@twitter.com, erm71 and elon-firebase@x.com. If

the government really wanted to find his phone number, they could have searched for phone numbers, text messages, or emails sent to or from those specific accounts.

10.     Robert Eisenhauer wrote on September 11, 2025 in this case that Mr. Musk was issued a government cell phone with the number 202-881-5010. The USDS could also have searched for mentions of that number, to determine if any other numbers were included in messages that included it or to validate their implication that he used that number to conduct official business. They did not.

11.     By not searching for his actual phone numbers or emails, the USDS intentionally limited the search terms to something that would return no data whatsoever unless a USDS employee literally sent an email or text to someone saying "Elon Musk's phone is 202-881-5010" or something comparable. Even if they typed "Elon said to call his cell phone number at 202-881-5010" that would not be identified during this search.

12.     Then they described how they searched for his phone numbers in the staff's actual phones. The Status Report says they searched the contacts of 13 USDS custodians to see if Elon Musk's number was in there. But they didn't actually look at the physical phones. Instead, they just searched the Microsoft Outlook email accounts of those 13 people for the names "Elon" or "Musk".

13.     They did this because of a specific technology policy at the Executive Office of the President. The policy states that if a staffer saves a name and number into the "All Contacts" list on their government phone, it automatically copies itself over to their Outlook email account on the main server. Think of it like this: if you add a new friend to the address book on your cell phone, the phone automatically sends a copy of that address card over the internet to your email account on your desktop computer.

14.     But here is the massive loophole in their search. Because they only searched the Outlook server for the specific names "Elon" or "Musk," they would completely miss him if a staffer saved his number under a nickname. If Amy Gleason, the acting administrator, saved his number simply as "Big Man," the Outlook server would just save a contact named "Big Man". The search for "Musk" would come up entirely empty. While the documents do not detail every single technical spec of their backend system, and I am not 100% certain how their specific server handles un-named metadata, it would be like looking in a printed phone book for a secret caller—if they are not officially listed under their real name, you will not find them there.

15.     Even worse, what if a staffer did not save his number as a contact at all? What if Mr. Musk just sent them a text message, and they texted him back without ever hitting the "Save Contact" button? According to the government's own policy description in the Status Report, only additions to the "All Contacts" list are backed up to Outlook.

16.     That means casual text messages or unsaved phone calls would not trigger the automatic backup. Those records might only live on the physical phone itself, or at the cellular carrier level. By only searching the Outlook backup, the USDS essentially ignored all the actual day-to-day phone activity that was not formally saved into a digital address book. In short, their search was designed to look like a thorough sweep, but it was actually a very narrow peek through a keyhole.

17.     It is also noteworthy that even when searching the Outlook server, the USDS did not identify the government-issued cell phone that Mr. Eisenhauer implied that he used to conduct official business. If true, this means that not one of the 13 custodians added any number used by Mr. Musk to their Contacts. The USDS asks us to conclude that this means that not one of the 13 custodians called, texted, or emailed Mr. Musk during this 4-month period.

4

18.     Based on the provided documents, there are several other significant gaps in the USDS search methodology beyond their failure to search known email addresses and their reliance on the Outlook backup policy.

19.     Limited Number of Custodians: The USDS only searched the electronic records and phone contacts of 13 custodians. By limiting the search to just 13 people, the USDS ignored dozens of potential sources, including individuals such as Steve Davis, or others who have been specifically described as Mr. Musk's top aides. I am confident that if the search had included those officials closest to Mr. Musk, it would have yielded at least one record of a digital communication with him, unless the other flaws (for instance, the exclusion of Signal messages) filtered those results out.

20.     Exclusion of Former Employees: The USDS decided to only search the Outlook contacts of individuals who were in leadership from January to May 2025 "and are still at USDS now". This means if any staffer communicated with Mr. Musk during the relevant timeframe but left the agency before April 2026, their contact records were entirely excluded from the search, even though that information would still reside on the Outlook server.

21.     Overly Restrictive Proximity Search: To search the electronic files, the USDS used the exact string ("Elon" OR "Musk") /3 ("phone" OR "cell" OR "number"). This requires the words to be within exactly three words of each other. As I described above, this narrow parameter would completely miss an email where someone wrote, "Here is Elon's contact info," or a standard email signature block where the name "Elon Musk" and his phone number are listed without the words "phone," "cell," or "number".

22.     Improper Removal of Email Attachments: The USDS removed "family attachments" from their review if the attachments themselves did not contain the specific search

string hits. This creates a gap where if an email read, "I have attached Elon's contact card," but the attached file (like a vCard or a spreadsheet) only contained the phone number without the explicit words "Elon" or "Musk," the attachment would have been discarded before an attorney ever reviewed it.

23.    Failure to Account for Signal Use: Mr. Musk and his coworkers are avowed users of Signal. Even if one of the 13 USDS custodians created a contact in Signal with the name "Elon Musk" and his phone number, that contact would not be uploaded to an Outlook server.

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date:   April 14, 2026

_____
Jason Counts